JEROME WILLIAMS *et al.*, Plaintiffs-Appellees, *v.* JAMES THOMPSON, Governor, *et al.*, Defendants-Appellants.

Fourth District   No. 16470

Opinion filed December 23, 1982.

Tyrone C. Fahner, Attorney General, of Chicago, and Donald D. Bernardi, State's Attorney, of Pontiac (Russell C. Grimes, Jr., and Robert P. Coyne, Assistant Attorneys General, of counsel), for appellants.

Daniel D. Yuhas and Jane Raley, both of State Appellate Defender's Office, of Springfield, for appellees.

JUSTICE MILLS delivered the opinion of the court:

Do penal inmates have a protected *right* to continue training in a program that the proper State authorities determine to abolish?

We hold they do *not.*

We reverse.

Plaintiffs here are inmates of the Pontiac Correctional Center (Pontiac). They had all been assigned for various lengths of time to duty in the dental laboratory at Pontiac and are endeavoring to obtain certification as dental laboratory technicians.

They initially filed a *pro se* complaint seeking to enjoin defendants from closing the lab. Following appointment of counsel, a second complaint, in two counts, was filed. Count I of the second complaint, which alleged that defendants improperly contracted with a private laboratory to provide services that had been provided by the Pontiac lab, is not involved in this appeal. Count II alleged that the Pontiac lab had been shut down—without affording plaintiffs notice or an opportunity to be heard—despite the laboratory's consistent profitability and its rehabilitative value. The complaint further alleged that plaintiffs suffered irreparable harm in the form of denial of further vocational training.

Defendants' motion to dismiss was denied and a temporary restraining order was issued. The court subsequently denied defendants' motion to reconsider and issued a preliminary injunction requiring defendants to either allow plaintiffs to complete their dental laboratory technician training at Pontiac or to provide them with alternative means of acquiring such training. In issuing the injunction, the court found that the plaintiffs had a right to complete dental laboratory technician training once they had begun it.

#### INJUNCTION

At issue here is the propriety of the injunctive order.

To obtain an injunction, the plaintiff must show (1) he has a right which needs protection; (2) he will suffer irreparable harm without the protection; (3) he has no adequate remedy at law; and (4) he is likely to succeed on the merits. (*Illinois Consolidated Telephone Co. v. Aircall Communications, Inc.* (1981), 101 Ill. App. 3d 767, 428 N.E.2d 747.) The issuance or denial of a preliminary injunction is addressed to the sound discretion of the trial judge and should not be disturbed on appeal unless it is against the manifest weight of the evidence. *Booth v. Greber* (1977), 48 Ill. App. 3d 213, 363 N.E.2d 6.

RIGHT

■ The element which defendants contend is lacking here is any right of plaintiff which needs protecting. In general, lawful incarceration limits—but does not completely *eliminate*—the rights and privileges of prisoners. (Compare *Jones v. North Carolina Prisoners' Labor Union, Inc.* (1977), 433 U.S. 119, 53 L. Ed. 2d 629, 97 S. Ct. 2532, and *Wolff v. McDonnell* (1974), 418 U.S. 539, 41 L. Ed. 2d 935, 94 S. Ct. 2963.) As *Wolff* indicates, "*** there must be mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application." 418 U.S. 539, 556, 41 L. Ed. 2d 935, 951, 94 S. Ct. 2963, 2975.

In striking this balance, the Supreme Court in *Meachum v. Fano* (1976), 427 U.S. 215, 49 L. Ed. 2d 451, 96 S. Ct. 2532, held that transfer of prisoners from one institution to another does not require a notice or a hearing because it is not *any* substantial deprivation of rights which triggers due process protections, but only those which are based on State law entitlements. (See *Board of Regents v. Roth* (1972), 408 U.S. 564, 33 L. Ed. 2d 548, 92 S. Ct. 2701.) Because State law did not condition transfer on any specific events, but allowed it in a wide variety of circumstances at the discretion of prison officials, no State law entitlement existed.

*Meachum* has been interpreted as holding that a State law entitlement exists when there is a limitation on prison official's discretion to withdraw a privilege or benefit. (*Arsberry v. Sielaff* (7th Cir. 1978), 586 F.2d 37.) The limitation may come from statute, rule, or regulation or by institutional policy or custom. (*Arsberry*.) The *Arsberry* court found no State law entitlement to participate in educational programs accrued from section 3—6—2 of the Unified Code of Corrections (Ill. Rev. Stat. 1977, ch. 38, par. 1003—6—2(d)) because the statute is merely a general policy statement that prisoners should have access to educational programs, and does not condition withdrawal of access on any specific events.

CONSTITUTION

■ Plaintiffs' first contention here is that the Illinois Constitution of 1970 (Ill. Const. 1970, art. I, sec. 11) (which provides that following conviction of a crime, "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship"), limits defendants' discretion. This position is simply untenable. Article I, section 11, is clearly directed toward a judge's determination of what sentence to impose, not to the carrying out of that sentence by prison officials. Although

judges must consider rehabilitation in imposing sentence, it is the rehabilitative potential of the *defendant*, not the Illinois prison system, which must be assessed. (See *People v. Smith* (1980), 91 Ill. App. 3d 438, 414 N.E.2d 1281 (holding that both the Illinois Constitution and the Unified Code of Corrections require assessment of *defendants'* rehabilitative potential in imposing sentence).) To adopt plaintiffs' interpretation would prevent any sentence unless there was evidence to show that the sentence would rehabilitate. This surely is not the intended meaning of article I, section 11.

### STATUTES

■ Next, plaintiffs contend that several provisions of the Unified Code of Corrections limit defendants' ability to close the Pontiac Dental Lab. Specifically, they rely on sections 1—1—2(c) and (d) of the Code, which state that it is the purpose of the Code to "prevent arbitrary or oppressive treatment of persons adjudicated offenders ***" and to "restore offenders to useful citizenship." (Ill. Rev. Stat. 1981, ch. 38, par. 1001—1—2(c), (d).) While this latter purpose has been noted by the supreme court (*People v. Mahle* (1974), 57 Ill. 2d 279, 312 N.E.2d 267), it is not the type of legislative statement which will support a claim of entitlement. As in *Arsberry*, it is merely a general policy statement and no specific conditions for the withdrawal of the benefit are stated.

■ Plaintiffs also argue that section 3—12—3 of the Code, which provides that the Department of Corrections "shall maintain programs of training in various vocations," limits defendants' discretion. (Ill. Rev. Stat. 1981, ch. 38, par. 1003—12—3.) The language of this section is almost identical to that involved in *Arsberry*, the only differences being the substitution of the word "maintain" for the word "provide" and the reference to vocational training as opposed to education. Plaintiffs place special emphasis on the use of the word maintain, but without cause. First, in the sense in which the words are used—to supply—*maintain* and *provide* are synonymous. (Black's Law Dictionary 859 (5th ed. 1979).) Second, even if the terms are not completely synonymous, the rationale of *Arsberry* is still compelling. Section 3—12—3 sets forth no specific events upon which withdrawal of access to vocational training is conditioned. Therefore there is no State law entitlement and due process is not violated.

■ Similarly, plaintiffs' reliance on section 3—12—6 of the Code is misplaced. That section requires the Department of Corrections to establish industrial production to secure "the most practical and efficient use of labor." (Ill. Rev. Stat. 1981, ch. 38, par. 1003—12—6.)

However, the determination of what is the most practical and efficient use of labor is left to the discretion of Department of Corrections officials, and the section confers no due process rights on plaintiffs.

Plaintiffs' reliance on section 3—12—7 of the Code begs the question on this appeal. That section provides only that *if* prison industries produce certain goods, the State and its agencies must satisfy their requirements by purchasing from the prison industry. It does not require prison industries to produce any goods at all! As the question here is production—not marketing—section 3—12—7 has no relevance.

## REGULATIONS

Finally, plaintiffs rely on Administrative Regulation 700 of the Department of Corrections, which provides that correctional industry programs shall "[d]iscontinue, continue or expand on the basis of profitability and create new production programs as market research indicates feasible." While this does establish a criteria for discontinuing an industry program—profitability—it confers no rights on plaintiffs. The regulation clearly was not intended to give prisoners input into the financial decisions of the Department of Corrections. See *Dixon Association for Retarded Citizens v. Thompson* (1982), 91 Ill. 2d 518, 440 N.E.2d 117, holding that restrictions on transfer of mental health patients do not apply when a facility is being closed.

Further, even if A.R. 700 can be said to be intended to benefit prisoners—and clearly it was *not*—it does not preclude the Department of Corrections from discontinuing a profitable program in favor of one which is even more profitable. In fact, section 3—12—6 of the Code would seem to vest discretion in the Department of Corrections officials to make just such a decision. We reject plaintiffs' argument that in *Kraut v. Rachford* (1977), 51 Ill. App. 3d 206, 366 N.E.2d 497, Illinois adopted an expansive view of property rights sufficient to support due process claims. There is language in *Kraut* about the objective expectancy of the continuance of a benefit, but a full reading of the case makes clear that the court was using the term "objective expectancy" synonymously with "legitimate claim of entitlement."

And, *Kraut* is not analogous to the present situation. There, the court found: that the plaintiff was entitled to a tuition-free education somewhere; that he had received such an education at a particular school in the past; and that his situation had not changed. Therefore, the court ruled that he had a right to continue at the particular school tuition free. Here, plaintiffs are prisoners whose due process rights are limited. They have no right to vocational training. (See *Arsberry.*) They are not being denied access to an existing program;

one is being abolished. It is inconceivable that the *Kraut* court would have required the school board to keep a school open to allow plaintiff to complete his education at that school, and we will not impose such absurd a requirement on defendants.

█ Because plaintiffs had no right to continue their training to be dental lab technicians, it was an abuse of discretion to enter the injunction below, and it is reversed.

Reversed.

TRAPP and GREEN, JJ., concur.