NOS. 4-08-0126, 4-08-0127 cons.    F: 12/19/08

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

MICHAEL RUIZ,                              )    Appeal from
          Plaintiff-Appellee,             )    Circuit Court of
          v. (No. 4-08-0126)              )    Sangamon County
ROGER E. WALKER, JR., Director of the     )    No. 06MR75
Illinois Department of Corrections;       )
RANDALL TAYLOR, Superintendent of School  )
District No. 428; and GUY PIERCE, Warden  )
of the Pontiac Correctional Center,       )
          Defendants-Appellants.          )
------------------------------------------)
EUGENE ROBERT BILSKI,                     )    No. 05MR495
          Plaintiff-Appellee,             )
          v. (No. 4-08-0127)              )
ROGER E. WALKER, JR., Director of the     )
Illinois Department of Corrections; GUY   )
PIERCE, Warden of the Pontiac             )
Correctional Center; RANDALL TAYLOR,      )
Superintendent of School District No.     )
428, BLAIR LEIBACH, Assistant Warden of   )
Operations for the Pontiac Correctional   )
Center; and ROBERT GRIFFIN, Assistant     )
Warden of Programs for the Pontiac        )    Honorable
Correctional Center,                      )    Leslie J. Graves,
          Defendants-Appellants.          )    Judge Presiding.
_____

JUSTICE McCULLOUGH delivered the opinion of the court:

On February 10, 2006, plaintiff, Eugene Robert Bilski,

an inmate at Pontiac Correctional Center (PCC), pro se filed an

amended complaint for declaratory judgment and injunctive relief

against defendants, Roger Walker, Jr., Director of the Illinois

Department of Corrections (DOC); Guy Pierce, warden of PCC;

Randall Taylor, superintendent of School District No. 428; Blair

Leibach, assistant warden of operations for PCC; and Robert

Griffin, assistant warden of programs for PCC. On February 15, 2006, plaintiff Michael Ruiz, an inmate at PCC, pro se filed a complaint for declaratory judgment and injunctive relief against defendants Walker, Pierce, and Taylor.

After a combined evidentiary hearing, the trial court entered orders in each case requiring defendants to "allow a willing staff member of DOC to proctor examinations to the plaintiff in his pursuit of approved correspondence courses for college credit, upon the plaintiff satisfying his burden of securing a willing proctor and an available time, date, and location for such examinations." Defendants filed notices of appeal, docketed as No. 4-08-0126 and No. 4-08-0127. At defendants' request, we have consolidated these appeals.

Plaintiffs here are inmates of PCC. Plaintiffs requested a staff member be allowed to proctor correspondence-course exams. Plaintiffs' request was denied. Plaintiffs filed a four-count complaint for declaratory judgement and injunctive relief against defendants requesting the trial court compel defendants to allow a staff member to proctor correspondence-course exams. The court filed as stated. This appeal followed.

Before addressing the merits of the appeal, we consider defendants' motion to strike portions of plaintiffs' brief. Defendants have moved to strike those portions of plaintiffs' brief that refer to facts not in evidence. Plaintiffs filed an

objection and a response thereto, and this court ordered defendants' motion be taken with the case.  "The general rule is that 'material which was not part of the court record or considered by the trial court is not part of the record on appeal and should not be considered by the appellate court.'"  Doyle Plumbing & Heating Co. v. Board of Education, Quincy Public District No. 172, 291 Ill. App. 3d 221, 229-30, 683 N.E.2d 530, 536 (1997), quoting Smith v. First National Bank of Danville, 254 Ill. App. 3d 251, 258, 624 N.E.2d 899, 905 (1993).  We find no reason to deviate from that rule in this case.  We will not consider the portions of plaintiffs' brief that refer to facts not in evidence.

A prisoner has no liberty or property interest in attending an educational program.  See Murdock v. Washington, 193 F.3d 510, 513 (7th Cir. 1999); 20 Ill. Adm. Code §405.20(a), as amended by 18 Ill. Reg. 2970, 2974 (eff. February 14, 1994) ("[n]othing in this [p]art shall be construed to require educational opportunities for all committed persons"); see also Hadley v. Snyder, 335 Ill. App. 3d 347, 354, 780 N.E.2d 316, 323 (2002) (a prisoner does not have a liberty interest in attending educational or recreational programs); Williams v. Thompson, 111 Ill. App. 3d 145, 148-51, 443 N.E.2d 809, 810-12 (1982) (reversing a preliminary injunction requiring prison officials to allow inmates to complete vocational training programs for lack of

- 3 -

right to participate in said programs).  In the instant case, plaintiffs have not shown that limitations on access to a staff member to proctor correspondence-course exams affected plaintiffs' liberty or property interests.  Consequently, these limitations did not violate plaintiffs' right to due process.

Plaintiffs contended that limitations on their access to postsecondary programs as prisoners confined in protective custody, as compared to the general prison population, violated their equal-protection rights.  DOC operates its protective custody units under a consent decree, Meeks v. Lane, No. 75-C-96 (N.D. Ill. 1981), issued by a three-judge panel of the United States District Court for the Northern District of Illinois.  The decree requires defendants to provide inmates in protective custody "educational opportunities commensurate with those available to inmates in the general population."  In this case, PCC does not house a general population.

Moreover, prison officials do not violate the equal-protection clause when they treat protective-custody inmates differently from general-population inmates based on legitimate penological concerns.  French v. Owens, 777 F.2d 1250, 1256 (7th Cir. 1985).  Restrictions on plaintiffs' access to a staff member to proctor correspondence-course exams were based on "limited resources and budgetary constraints."  Because these limitations were based on legitimate penological concerns, plaintiffs failed

- 4 -

to show that restricted access to postsecondary educational programs violated plaintiffs' equal-protection rights.

Similarly, plaintiffs contended that limitations on their access to postsecondary programs as male inmates at PCC, as compared to female inmates at Dwight Correctional Center (DCC), violated their equal-protection rights.  Male and female prisoners are often not similarly situated in relevant respects for purposes of asserting equal-protection claims.  See Klinger v. Department of Corrections, 107 F.3d 609, 612 (8th Cir. 1997) (male prisoners housed in multiple institutions and female prisoners housed in one not similarly situated for purposes of access to programs and services based on differences in prison demographics); Keevan v. Smith, 100 F.3d 644, 648 (8th Cir. 1996) (male and female inmates not similarly situated for purposes of prison programming based on different number of male and female inmates, differences in sentences served, and classification levels of male and female inmates); Women Prisoners of the District of Columbia Department of Corrections v. District of Columbia, 93 F.3d 910, 924-27 (D.C. Cir. 1996) (male and female inmates housed in separate prisons not similarly situated for purposes of access to programs and services); Timm v. Gunter, 917 F.2d 1093, 1102 (8th Cir.1990) (male and female inmates not similarly situated for purposes of pat-down searches by opposite-sex guards); Pargo v. Elliott, 894 F. Supp. 1243, 1261 (S.D. Iowa

- 5 -

1995) (male and female inmates not similarly situated for purposes of inmate security and programming where male inmates housed in different facilities by security classifications and female inmates housed together, served shorter sentences, and had special characteristics).

Defendants' affidavits in support of their response to a motion for summary judgment by plaintiffs stated that DCC houses a total of 977 female inmates. Thirty-four inmates are held in segregation status and nine are in protective custody. The remaining 934 inmates are made up of multilevel classifications. In comparison, PCC houses 1,619 inmates. Three hundred ninety-eight are held in a medium-security unit, six hundred ninety-eight are in segregation, and five hundred are in protective custody. DCC is classified as maximum security because it is the only DOC facility to house maximum-security female inmates in Illinois. However, the maximum-security inmates make up a small percentage of the overall population. In comparison, PCC's primary purpose is to house long-term disciplinary-segregation and protective-custody inmates. Female inmates housed in DCC's segregation- and protective-custody units do not participate in educational programing that is also not available to those inmates at PCC.

Thus, the programs at PCC and DCC reflect separate sets of decisions based on entirely different circumstances. Program

priorities differ from prison to prison depending on innumerable variables that officials must take into account. PCC and DCC are different institutions with different inmates, each operating with limited resources to fulfill different specific needs. Thus, plaintiffs and DCC inmates are not similarly situated for purposes of prison programs and services and plaintiffs have failed to make the requisite threshold showing that they are similarly situated to the group that they claim receives favorable treatment. For this reason, plaintiffs have not suffered an equal-protection violation.

Likewise, neither the provisions in the Unified Code of Corrections (Unified Code) nor the Illinois Constitution, each of which propounds general policies of rehabilitation and restoration to useful citizenship, creates an entitlement to participate in postsecondary education. See 730 ILCS 5/1-1-2 (West 2004) (concerning restoration to useful citizenship); 730 ILCS 5/3-7-1 (West 2004) (requiring DOC to promulgate rules in compliance with the Unified Code); Ill. Const. 1970, art. I, §11. Instead, whether a prisoner may "secur[e] a willing proctor and an available time, date, and location for *** examinations" is a matter of discretion solely for DOC. See 730 ILCS 5/3-6-2(d) (West 2004) (postsecondary opportunities encouraged "wherever possible"); 20 Ill. Adm. Code §405.20(a)(1)(D), as amended by 18 Ill. Reg. 2970, 2974 (eff. February 14, 1994) (adult-division educa-

tional provisions shall include postsecondary education "where possible").

Courts are not to intervene in matters within the discretion of DOC, including whether a staff member may proctor correspondence-course exams.  As such, ruling on plaintiffs' request to allow a staff member to proctor correspondence-course exams exceeds the scope of the trial court's authority.

Because plaintiffs had no right to proctored correspondence-course exams, the trial court abused its discretion by entering the injunction below, and we reverse.

Reversed.

TURNER and STEIGMANN, JJ., concur.