The H. A. Hillmer Company *et al.* Appellants, *vs.* Martha Behr, Appellee.

*Opinion filed October 16, 1914.*

1. Highways—*a court of equity has jurisdiction to enjoin obstruction of public highway.* A court of equity has jurisdiction to enjoin the obstruction of a public highway at the suit of persons who are directly and injuriously affected. (*City of Pana* v. *Central Washed Coal Co.* 260 Ill. 111, distinguished.)

2. Same—*acceptance of street by city may be express or implied.* An express acceptance of a street by a city may be shown by some order, resolution or action of the public authorities made and entered of record, or an acceptance may be implied from the acts of the public authorities recognizing the existence of the street and treating it as a public way.

3. Same—*mere fact that deed of land to city was recorded does not constitute acceptance.* The fact that a quit-claim deed to a city of a strip of land for a street was recorded and afterward taken from the recorder's office by one of the officials of the city does not constitute an acceptance of the street.

4. Same—*what amounts to a practical revocation of quit-claim deed to city.* Where a quit-claim deed to a city of a strip of land for a street is subject, as to part of the strip, to a prior trust deed, the subsequent foreclosure of the trust deed amounts to a practical revocation of the offer to dedicate such portion of the strip.

5. SAME—*question whether way will be of benefit to public is important on question of acceptance.* The question whether a way will be of benefit to the public is important upon the question of acceptance, and when it appears that such way is not needed for public accommodation, stronger proof of acceptance is necessary than where the way would be of public benefit.

6. SAME—*when fact that strip of land was not assessed for general taxes does not show acceptance by city.* Before municipal authorities can be charged with responsibilities for the care and improvement of a strip of land as a street or highway there must be an acceptance of the offered dedication by the proper authorities, and the mere fact that the assessor failed to assess the strip for general taxes for over thirty years does not show acceptance by the city authorities.

7. SAME—*what tends to show that city authorities did not consider that they had accepted street.* The fact that a cement sidewalk and a pavement are laid in front of a strip of land and paid for, by special assessment, by persons claiming to own the strip tends to show that the city authorities did not consider that they had ever accepted the strip as a street.

8. SAME—*whether there is an acceptance by user depends upon the facts.* An acceptance of an offered dedication may be shown by user, but the question whether the user by the public is of such a nature as to constitute an acceptance is a question of fact, depending upon the circumstances of each particular case.

9. SAME—*what does not constitute estoppel to deny dedication as to private owners.* The mere fact that the owners of a strip of land quit-claimed the same to the city for a street does not estop their successor in title from denying the dedication as against private owners, where no conveyances were ever made with reference to the strip as a street or alley before a revocation of the offered dedication and nothing was done which has caused such private owners to act to their injury in reliance upon the deed.

10. EQUITY—*decree dismissing bill for injunction may reserve the question of damages.* A decree dismissing a bill to enjoin the erection of a building on a strip of land claimed by the complainants to be a street but continuing the injunction in force pending an appeal may properly reserve for future consideration the question of damages for wrongfully suing out the injunction.

APPEAL from the Circuit Court of Stephenson county; the Hon. OSCAR E. HEARD, Judge, presiding.

CHARLES H. GREEN, for appellants.

R. R. TIFFANY, for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

This was a bill filed by the H. A. Hillmer Company, a corporation, and Henry A. Hillmer, as one of its stockholders, in the circuit court of Stephenson county, against appellee, Martha Behr, to enjoin her from continuing the erection of a building on a certain tract of land in the city of Freeport, on the ground that it was a public street. It was afterward amended so as to include a prayer that the said tract of land be declared a public street or alley and the title thereto quieted in the city. Answer and replication were filed. After a hearing the bill was dismissed for want of equity.

The location of the premises in question is shown substantially by the following plat:

The appellant company owned lots 3, 4 and 5 in block 60 and had on it several buildings used for the conduct of

its grain, coal and wood business. Tract "A" and its continuation across tract "D" is the disputed land, which is claimed to be a street or alley 27 feet in width, extending from Exchange street to the platted alley running parallel with said street. May 7, 1855, Strong H. Earll, being the owner of the tract marked "D," gave a trust deed thereon to Homer N. Hibbard, trustee, together with other lands. On May 31, 1855, Strong H. Earll, Edward Edgerton and Edward S. Hanchett, being the persons who among them owned the easterly 27 feet of said lot 2, (each owning a part in severalty,) gave a quit-claim deed to said easterly 27 feet to the city of Freeport for use as a street. This deed was recorded in July of the same year. In February, 1856, Earll gave another trust deed, including tract "D." In June, 1857, Earll conveyed to Silas D. Clark the said tract "D," and also a right of way over the easterly half of said lot 2 for use as an alley, subject to the trust deed given May 7, 1855. Default having been made in the terms of said trust deed of May 7, 1855, it was duly foreclosed and William M. Hanchett became the purchaser, receiving a trustee's deed therefor March 3, 1860. Afterward, by various conveyances, said tract became vested in William W. Smith. Tract "A," being the south 90 feet of the east 27 feet of said lot 2, was sold for taxes in 1894, and in 1896 a tax deed was executed by the county clerk therefor to William H. Mitchell. Afterward various conveyances were made between Smith and Mitchell, so that each became the owner of an undivided half of tracts "A" and "D," and after Smith's death Mitchell acquired the full interest in both tracts. In 1907 Mitchell petitioned the city council of Freeport, setting forth the quit-claim deed from Earll, Edgerton and Hanchett of the 27-foot strip to the city and that the city had never accepted such conveyance or used said property as a street; that the trust deed had been foreclosed, thus making it impossible to use the strip as a street; that tract "A" had been sold to petitioner for

taxes and he was in peaceful possession of the same under his tax deed; that the city had never recognized such strip as a street and had required the petitioner to build a sidewalk in front of it, and had done other acts showing that the city recognized the strip as private property. This petition was referred to the finance committee of the council, and upon its favorable report the council instructed the mayor and city clerk to execute and deliver to said Mitchell a quit-claim deed to the east 27 feet of said lot 2. Said officers thereafter complied with such instructions September 6, 1907.

From the testimony offered it appears that the city council in 1904 ordered a cement sidewalk along the northerly line of Exchange street, and that the said walk, upon notice from the city, was paid for, so far as it extended in front of the 27-foot strip, by Smith and Mitchell, as owners. In 1910 the city paved a portion of Exchange street, including that in front of the strip in question, by special taxation. Mitchell paid $117.49 as the special tax assessed against the east half of lot 2. In making said improvements the curbing was carried straight across said tract, with no break marking an alley or indicating that it was anything but private property. The west three feet of the east half of lot 2 had been conveyed as a separate tract, from time to time, to various owners, and finally also vested in Mitchell. Apparently the tract referred to for convenience in this opinion and in the briefs as the "27-foot strip" is a fraction of a foot wider than that figure. In 1913 Mitchell sold the east half of lot 2 to the appellee and she started to construct a building thereon, having put in a basement and part of the walls before the injunction was issued. The master in chancery to whom the application for injunction was made granted a temporary injunction, and the chancellor, although dismissing the bill, continued the injunction in force pending the appeal to this court.

Several witnesses testified on behalf of appellants that this 27-foot strip had been driven over by teams for many years. The appellant Henry A. Hillmer stated that he had been about the premises there, as an employee of the former firms occupying it and as an official of the present company, since 1884; that there had been corn-cribs standing along the westerly side of the Hillmer tract, and that the 27-foot strip had been used, ever since he remembered, as an alley for their customers and teamsters. Several former employees of the Hillmer Company or its predecessors in the ownership of the property, and several persons who had resided in that locality for years, testified that teams had driven across this strip to take corn to the cribs. or merchandise to or from the Hillmer property, and that they understood the strip was a street or alley. Several other witnesses testified for appellee that they had been familiar with the surroundings for years and never understood this to be a street or alley. The weight of the testimony shows that the front part of the 27-foot strip was rather high and formed an abrupt slope several feet above the street level; that on this account it was practically impossible to drive a loaded team on or off the strip from or to Exchange street. The weight of the testimony is also that those who drove onto this strip came in from the alley on the rear of the lots, stopped at the corn-cribs on the westerly edge of lot 3, and in driving off, after they had passed the front or southerly corner of the cribs, drove obliquely across the southwesterly corner of lot 3 (where the land was lower) to Exchange street. If they came from this latter street they reversed that course, and did not directly drive from the street onto the 27-foot strip but drove onto lot 3 over a small bridge which was built to make it easier to drive across the gutter and up the slope. There is some dispute in the testimony as to where this bridge was situated, some saying it was in front of the 27-foot strip and some placing it in front of lot 3. In our judgment the testimony

tends strongly to show that it was to the east of said 27-foot strip. The testimony for appellee also shows that this 27-foot strip had been used, in whole or in part, for many years prior to the filing of the bill, for business purposes by those who occupied the property immediately west of it; that for a number of years there was a shed which ex-, tended nearly across the 27-foot strip to the Hillmer property, under which was kept lumber. Some of the employees of this lumber concern stated that these sheds extended entirely across the 27-foot strip to its easterly edge, but that enough room was left, in piling lumber under the shed, so that a team could drive between the lumber piles and the corn-cribs. There is other testimony to the effect that for years previous to the bringing of this suit the southerly line of this 27-foot strip had a fence built entirely across it, and that a pig-pen had been located on the strip near the southern boundary, and that for several years before the beginning of this suit the 27-foot strip was rented to a man by the name of Warsawski, who used it as a junk yard and piled old iron and junk over its entire width. Mitchell testified to these facts, and also to the fact that appellant Hillmer had talked with him several times about purchasing Mitchell's interest in this 27-foot strip. Hillmer himself testified with reference to this matter. He said that he thought there was good reason for buying the ground next to his own and he asked Mitchell to make a price for it, but the price was never made; that Mitchell said to him that he could not give him anything but a quit-claim deed, but they (apparently the heirs of William Smith) would not make him any trouble, because Hillmer's property was next to the Mitchell property.

The first question raised is as to whether a court of equity had jurisdiction, by injunction, to prevent the obstructing of a public street or alley. Counsel for appellee argues that as injunction is an extraordinary remedy it should only issue as a pressing necessity and that no emer-

gency has been shown, and therefore there is no reason why the remedy at law is not adequate. This court has repeatedly held that equity has jurisdiction to enjoin the obstruction of a public highway at the suit of those who are directly and injuriously affected. (*Green* v. *Oakes,* 17 Ill. 249; *Nelson* v. *Randolph,* 222 id. 531; *Waller* v. *Village of River Forest,* 259 id. 223.) Nothing is said in *City of Pana* v. *Central Washed Coal Co.* 260 Ill. 111, that supports the contention of appellee that a court of equity does not have jurisdiction in this case. The facts there are clearly distinguishable from those in this case. The contention of appellee on this point cannot be sustained.

One of the principal questions in this case is as to whether the 27-foot strip deeded to the city was ever accepted by it as a public street or alley. An acceptance of a street by a city may be either express or implied. An express acceptance may be shown by some order, resolution or action of the public authorities made and entered of record. An acceptance may be implied from the acts of the public authorities recognizing the existence of the street and treating it as a public way. Proof of the existence must be unequivocal, clear and satisfactory. *Chicago, Milwaukee and St. Paul Railway Co.* v. *City of Chicago,* 264 Ill. 24; *People* v. *Johnson,* 237 id. 237.

It is argued by appellants that it must be presumed that the city accepted this strip as a street or alley because the deed was duly recorded and was afterwards taken from the recorder's office by one of the officials of the city. The general rule is that the recording of a deed raises the presumption that it has been delivered. (*Blake* v. *Ogden,* 223 Ill. 204.) But this presumption is rebutted, even as between private parties, if the deed imposes a burden upon the grantee. (*Hulick* v. *Scovil,* 4 Gilm. 159; *Union Mutual Life Ins. Co.* v. *Campbell,* 95 Ill. 267.) Where the deed or plat, if accepted, imposes a burden upon the city to improve and repair the street, acceptance cannot be pre-

sumed from the mere execution or recording of the plat
or deed. (*Littler* v. *City of Lincoln,* 106 Ill. 353; *Wood-
burn* v. *Town of Sterling,* 184 id. 208; 3 Dillon on Mun.
Corp.—5th ed.—sec. 1090.) As there must be an accept-
ance by the public or the public authorities in order to make
the act complete, the making and recording of a plat (and,
by analogy, the making and recording of a deed,) to the
municipality must be regarded, before acceptance, as a mere
offer. Such an offer may be revoked by the owner of the
land before acceptance, subject, however, to the exception
that the owner will be estopped to deny dedication when
private rights have intervened. (*Woodburn* v. *Town of
Sterling, supra; Woollacott* v. *City of Chicago,* 187 Ill.
504.) Necessarily, therefore, the mere act of recording
the deed did not constitute an acceptance.

Acceptance may be shown in many ways,—by any act
with respect to the property claimed to be dedicated that
clearly indicates an assumption of jurisdiction and domin-
ion over it by the public authorities. (4 McQuillin on
Mun. Corp. sec. 1579; *People* v. *Johnson, supra.*) We
find no direct evidence in this record indicating an inten-
tion on the part of the public authorities to assume juris-
diction and control over this strip. Dedication must usually
be accepted within a reasonable time. (*City of Venice* v.
*Ferry Co.* 216 Ill. 345; 1 Elliott on Roads and Bridges,—
3d ed.—sec. 172; 3 Dillon on Mun. Corp.—5th ed.—sec.
1089.) What is a reasonable time must depend upon the
circumstances of the particular case. No general rule can
be laid down. About two years after the quit-claim deed
was made to the city for this 27-foot strip the owner of
tract "D," who signed the quit-claim deed to the city, con-
veyed said tract to Silas D. Clark, with a right of way over
the easterly half of lot 2 for use as an alley, and subject,
also, to the trust deed given theretofore. The giving of
this deed tended to show that the owner of tract "D" did
not consider that the city had accepted the deed conveying

the 27-foot strip. The quit-claim deed was subject to the trust deed theretofore given. The foreclosure of the trust deed as to tract "D" within a few years after the quit-claim deed was executed amounted to a practical revocation of the offer to dedicate that part of the strip. (3 Dillon on Mun. Corp.—5th ed.—sec. 1091.) This left the south 90 feet of the 27-foot strip, if it were thereafter accepted, practically a blind alley or *cul de sac,* of little or no benefit to the public. The question whether a public way will or will not benefit the public is usually, if not always, an important one, for when it appears that such public way is not needed for public accommodation much stronger evidence is usually required than in cases where it appears that it would be a public benefit. 1 Elliott on Roads and Bridges,—3d ed.—sec. 167. See, also, *Alden Coal Co.* v. *Challis,* 200 Ill. 222, and *Owen* v. *Village of Brookport,* 208 id. 35.

This strip was not assessed for general taxation for over thirty years after the quit-claim deed was made to the city, and it is argued by counsel for the appellants that this fact tends to show a public acceptance of the dedication. (*Lee* v. *Town of Mound Station,* 118 Ill. 304; *Earll* v. *City of Chicago,* 136 id. 277; *Eisendrath & Co.* v. *City of Chicago,* 192 id. 320.) The fact of not assessing property may be of more or less weight in showing acceptance by the public. In order to charge municipal authorities with responsibilities for the care and improvement of a public street or highway there must be an acceptance by the municipality or by the proper local public authorities. (3 Dillon on Mun. Corp.—5th ed.—sec. 1087; 9 Am. & Eng. Ency. of Law,—2d ed.—43; *City of Rock Island* v. *Starkey,* 189 Ill. 515.) The assessor during the years in question when this property was not assessed, in most localities in Illinois, was not a city official. The burden of proof to establish a dedication is usually upon the party setting it up. (13 Cyc. 475, and cases cited.) The right

264 — 37

to accept the dedication of this 27-foot strip over the north 30 feet, or tract "D," was, as we have seen, revoked by the foreclosure proceedings, and even if there had been an acceptance theretofore, the foreclosure proceedings would have nullified such acceptance and put the title, as to the north 30 feet, in the purchaser. It might well be argued, therefore, that the assessors during these years, in leaving the entire tract unassessed, including tract "D" as well as tract "A," failed to look up the title, and that such failure to assess can have little weight, even if the assessors were city officials. On this record it must be presumed that they were not. In 1904 a cement sidewalk was built in front of this property and in 1910 the street was paved, and the assessments for these improvements were paid as if this property were owned by individuals. This tended to show that at that time the municipal officers did not consider that the city had ever accepted or had any rights in this street. (4 McQuillin on Mun. Corp. sec. 1585.)

An acceptance may be shown by user. In some jurisdictions it is held that an uninterrupted user for twenty years must be shown in order to constitute an acceptance, while in others a user for a less time is sufficient. The general rule is, that to show such acceptance the user need not be for a period of twenty years or any other definite time. (4 McQuillin on Mun. Corp. sec. 1582, and cases cited.) Whether the user by the public is of such a nature as to constitute an acceptance is a question of fact, depending upon the circumstances of each particular case. "No general rule can be laid down defining the duration or the character of the public user which will be deemed to be an acceptance of the dedication, but it may be said that in general it must be of such a nature and continue for such a time as to render the reclamation of the lands by the owner unjust, inequitable and improper, as impairing the public interests and affecting private rights." (3 Dillon on Mun. Corp.—5th ed.—sec. 1086.) The evidence here does

not show such user. There is no satisfactory testimony
in this record of user of the southerly end of this strip
at any time by the public. Indeed, we think the evidence
tends strongly to show that it was impossible to use that
portion of the strip in any practical way as an alley or
public street for entering directly from Exchange street on
the south, on account of the land being much higher than
the street at that point and there being no passageway from
the street to the strip. The weight of the evidence on this
record is to the effect that in using teams on this 27-foot
strip they entered from Exchange street on the south by
driving over a bridge or passageway onto lot 3 and then
passing diagonally across the corner of that lot to the
27-foot strip, so as to go west of the cribs located on lot 3.

There is no conflict in the evidence that a large portion
of this 27-foot strip was occupied for private purposes for
practically all of the time to which the testimony of the
various witnesses relates. Considered most favorably to ap-
pellants' contention, the evidence shows that only the east-
erly part of this strip, wide enough for teams to pass over,
was ever used for teaming purposes. In the light of the
evidence in this record such use is just as consistent with
its being a permissive one from the owners of said 27-foot
strip as it is with the claim that such use showed an ac-
ceptance by the public. There was no well defined public
traveled way over any part of said 27-foot strip during any
of these years. Indeed, from the evidence it may reason-
ably be argued that if there was a public way shown by
user over any part of said 27-foot strip, by the same evi-
dence it was shown that there was a public way diagonally
across the south-westerly corner of lot 3. While there is
testimony that some of the old residents understood that
there was a public way over this strip, the public, generally,
did not understand that to be the fact, for some of the
witnesses who had lived in that locality for years had not
heard of such a public way. Besides, it is manifest that

the public officials for more than twenty years previous to the institution of this suit understood this to be private property. The action of the city authorities in 1907, when they quit-claimed this strip to Mitchell, apparently without objection on the part of anyone, strongly supports appellee's contention that everyone understood that the city had never accepted the right to use any part of the strip as a public way. From this record the court was fully justified in finding that the 27-foot strip of land had never been accepted by the public authorities as a street or alley.

The facts in this case do not bring it within the rule that the owner is estopped to deny the existence of a dedication because it would be an injury to intervening private rights. A mere survey of land by the owner into lots, squares, streets, etc., will not, without a sale, amount to a dedication. The sale of lots with reference to such plat, when describing lots as bounded by a street, as between the grantor and the grantee, will be held to be forever binding upon both, and the owner is precluded from exercising any power of retraction without the consent of those to whom he has sold property. (3 Dillon on Mun. Corp.—5th ed.—secs. 1083, 1090.) This court has held in numerous cases that when the owner of lands exhibits a map or plat of a town or addition and on which a street is defined, and sells lots abutting on such street with a clear reference to the plat exhibited, then the purchasers of said lots have a right to have said street remain open forever. The owner or owners who plat lands and sell property with reference thereto, their privies and successors in title, are estopped, as against purchasers and holders of property so platted and bought with reference to such plat, to deny the existence of streets or public passageways platted thereon. (*Earll* v. *City of Chicago, supra; Russell* v. *Chicago and Milwaukee Electric Railway Co.* 205 Ill. 155; *Village of Riverside* v. *MacLain,* 210 id. 308; *Stevenson* v. *Lewis,* 244 id. 147; *Marshall* v. *Lynch,* 256 id. 522; 1 Elliott on

Roads and Bridges,—3d ed.—sec. 165.)   The 27-foot strip
in question was not made a public highway on the original
plat.   No evidence is found in the record indicating that
the appellant corporation or its grantors conveyed or pur-
chased the property now owned by said corporation with
reference to said strip as a public way, or that anyone had
conveyed any property in that vicinity with reference to
such strip as a public street or alley.   No evidence is found
in the record showing any injury to private rights, as that
term is recognized in the decisions just referred to, by the
deeding of this property to Mitchell by the city.   If this
record showed that the dedication of this strip had been
made complete by acceptance before a revocation of any
part or all of it, or that deeds had been made by the origi-
nal grantors of this strip, or their privies, to any property
in the vicinity, referring therein to such strip as a public
way, then a different situation would be presented.   The
reasoning of this court in *City of Chicago* v. *Ward,* 169
Ill. 392, relied on by counsel for appellants, might then be
in point, as would the reasoning of the decisions last here-
tofore cited, but no such situation is presented here.

In view of this holding it is unnecessary to consider the
questions argued in the briefs as to whether there was a
public way by prescription, or as to whether, if the street
had been accepted by the public authorities, there was an
abandonment by non-user, or whether the city had a right
to vacate the street and deed it to the original owners or
their grantee.

The decree in this case reserved for future consider-
ation the question of damages for wrongfully suing out
the injunction.   It was proper to make such a reservation.
*Johnson* v. *McNellis,* 228 Ill. 351;  *Poyer* v. *Village of
DesPlaines,* 123 id. 111;  *Wing* v. *Dodge,* 80 id. 564.

The decree of the circuit court will be affirmed.

*Decree affirmed.*