HARRIS BANK OF ST. CHARLES, as Trustee, *et al.*, Plaintiffs-Appellants, v. THE CITY OF GENEVA, Defendant-Appellee (Jeffrey S. Arnold *et al.*, Defendants).

Second District    No. 2—95—0733

Opinion filed March 28, 1996.

RATHJE, J., specially concurring.

Stephen M. Cooper, of Law Offices of Cooper & Storm, of Geneva, for appellants.

Charles A. Radovich, of Radovich & Radovich, of Geneva, and Peter K. Wilson, Jr., and Colleen G. Thomas, both of Mickey, Wilson, Weiler & Renzi, P.C., of Aurora, for appellee.

JUSTICE INGLIS delivered the opinion of the court:

Plaintiffs, Harris Bank of St. Charles, as trustee under trust No. 1843, and Lorraine Darrow, appeal from an order which denied their motion for summary judgment and granted the summary judgment motion of defendant, the City of Geneva (City). The issue on appeal is whether a 16-foot-wide strip of land which is shown on a subdivision plat as being "Reserved in Favor of Owners for Planting Purposes" was dedicated to the public and should be included as a part of the right-of-way of an abutting road. We affirm.

Plaintiffs commenced this declaratory judgment action which sought a declaration that the City owned the 16-foot strip in question and that the strip is a part of the Dunstan Road right-of-way. The property at issue is contained in this plat of subdivision.

Plaintiffs are the owners of a strip of land that the Chicago & Northwestern Railway Company (CNW) once owned. The land was improved with tracks that connected CNW's Aurora Branch to its main east-west line. The tracks were removed after CNW sold the property. Plaintiffs' property runs essentially south to north. Because the property was originally a spur track, the north end of the property begins to arc to the east. Immediately to the west of plaintiffs' strip are lots belonging to the Meadows subdivision. The 16-foot strip at issue lies directly to the east of plaintiffs' property and likewise runs essentially south to north with an easterly arc at the north end. The Dunstan Road right-of-way abuts the eastern boundary of the 16-foot strip and runs south to north with an easterly arc at the north end. The lots at issue abut the western boundary of the 16-foot strip.

The plat of subdivision for the Meadows was recorded on March 26, 1928. The plat designated several roads. The rights-of-way for Cheever Avenue and Meadows Road are shown on the plat as being 66 feet wide. The Sunset and Golf Roads rights-of-way are each 60 feet wide, and the Dunstan Road right-of-way is 50 feet. The 16-foot strip running alongside Dunstan is marked, "Reserved in Favor of Owners for Planting Purposes." The Dunstan Road right-of-way flows into and becomes the Cheever Avenue right-of-way. The planting strip ends where Dunstan Road becomes Cheever Avenue. At that point, the Dunstan Road right-of-way, which is 50 feet wide and abuts the 16-foot planting strip, abruptly becomes the 66-foot-wide Cheever Avenue right-of-way.

On April 2, 1928, the City council approved an ordinance for the installation of roads and a system of water mains and sanitary sewers. The engineering plans for these projects show the right-of-way for Dunstan Road as 66 feet wide.

On August 2, 1946, the plat for Dryden's addition to the Meadows was filed. To accommodate some of the new lots, the plat extends Dunstan Road south. The adjacent planting strip was not extended, however. Therefore, the strip comes to an abrupt end, and the Dunstan Road extension is 66 feet wide.

Around 1965, the City forestry department planted trees in the 16-foot strip and maintained them from time to time. The City also installed light poles within the strip and ran electrical lines under the strip. The City obtained from CNW a license to run the electrical lines underneath the former railroad property which plaintiffs now own. There is nothing in the record indicating that the City obtained from any purported owners of the 16-foot strip a license to run the electrical lines underneath the strip.

At the time the plat for the Meadows was recorded, all parcels

that were owned then were assigned tax numbers. A tax number was not assigned to the 16-foot strip, and no taxes were levied against it until March 1992, when, for the first time, the Kane County supervisor of assessments assigned a tax number to the parcel.

Plaintiffs sought to subdivide their property into 11 lots and to develop single-family homes on the lots. Although plaintiffs did succeed in obtaining an R-1 zoning classification for the property, the City denied plaintiffs' petition to subdivide. The City maintained that, because the 16-foot strip lay between plaintiffs' property and Dunstan Road, plaintiffs' property lacked the required frontage on a public street.

Count I of plaintiffs' three-count complaint sought a declaration that the City has legal title to the 16-foot strip and that plaintiffs' property therefore has frontage on Dunstan Road. Plaintiffs and the City each filed summary judgment motions in connection with this claim. The trial court agreed with the City and concluded that the 16-foot strip was not dedicated to the public. Therefore, the court denied plaintiffs' motion for summary judgment and granted the City summary judgment on count I. The trial court made the requisite finding for an appeal pursuant to Supreme Court Rule 304(a) (155 Ill. 2d R. 304(a)), and plaintiffs timely appealed.

Plaintiffs contend that the creator of the plat intended to dedicate, and the City accepted, a right-of-way for Dunstan Road which right-of-way, plaintiffs argue, is 66 feet wide. Therefore, according to plaintiffs, their property does have the required frontage on a public street.

Summary judgment is proper where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2—1005(c) (West 1994). We conduct a *de novo* review of the trial court's decision to grant summary judgment. *Rockford Memorial Hospital v. Department of Human Rights*, 272 Ill. App. 3d 751, 754 (1995).

The issue on appeal is whether the 16-foot strip may be used as a general right-of-way for the public. To resolve this issue, it is necessary to determine whether there has been either a statutory or common-law dedication.

■ The Plat Act provides that the acknowledgement and recording of a subdivision plat "shall be held in all courts to be a conveyance in fee simple of such portions of the premises platted as are marked or noted on such plat as donated or granted to the public." 765 ILCS 205/3 (West 1994). "[T]o effect a statutory dedication, the provisions of the Plat Act must be complied with fully, and the plat

must clearly indicate a donation to the public of the real estate in question." *Semmerling v. Hajek*, 258 Ill. App. 3d 180, 187 (1994). In determining whether there was a valid statutory dedication, a court is limited to an examination of the plat and the marks and notations appearing thereon. *Emalfarb v. Krater*, 266 Ill. App. 3d 243, 252 (1994).

■ We conclude that the plat reveals a clear intent to dedicate both the 50-foot Dunstan Road right-of-way and the 16-foot planting strip to the public. The subdividers appeared to have intended that the general width of the road right-of-way would be 66 feet. First, no right-of-way within the subdivision is less than 60 feet wide. Second, Dunstan Road becomes Cheever Avenue, which lies on a 66-foot right-of-way. If the subdividers intended a dedication of a 66-foot right-of-way for Cheever Avenue, they likewise probably intended a dedication of 66 feet for Dunstan Road.

The notation, "Reserved in Favor of Owners for Planting Purposes," does not detract from the public purpose for which the 16-foot strip was dedicated. Rather, this language evidences an intent to have the 16-foot strip serve as a parkway running alongside Dunstan Road and a buffer to separate Dunstan Road and the adjacent lots from the railroad tracks. The reservation in favor of "owners" in this situation more appropriately signifies the creation of an option in favor of the lot owners to plant on the strip. However, because the designation of the strip as a planting strip along Dunstan Road "inherently signifies a public use" (see *Emalfarb*, 266 Ill. App. 3d at 255), we conclude that there was a statutory dedication of the 16-foot planting strip.

However, that there was a statutory dedication of the strip does not necessarily mean that plaintiffs can claim a right-of-way giving their property frontage on Dunstan Road. When the dedication is accepted, the grantee acquires legal title to the land upon an express charitable trust to use the property for public purposes. This means that the grantee may not alienate or dispose of the property for its own benefit, and, as trustee, it has no right to use the property inconsistently with the public use to which it was dedicated. *Emalfarb*, 266 Ill. App. 3d at 248.

The City may not allow the planting strip to be used as a public road because that use would be inconsistent with its designated use as a planting strip. Plaintiffs' proposed use of the strip as a road would destroy the current character of the strip. We note that the use designated for the planting strip is still valid even though the railroad tracks have been removed. The plat states only that the strip is to be used for planting and does not designate that the parcel

must be used as a buffer separating the tracks from Dunstan Road and nearby lots. Its current use as a parkway is entirely consistent with the designated use.

We also conclude that, even if there were no statutory dedication of the 16-foot strip, we would nonetheless find that a common-law dedication occurred. For a common-law dedication to be effective, there must be unequivocal evidence of (1) an intent to dedicate the property to the public use and (2) acceptance by the public. *First Illinois Bank v. Valentine*, 250 Ill. App. 3d 1080, 1091 (1993). When a common-law dedication occurs, the fee remains in the dedicator, subject to an easement for the benefit of the public. *Emalfarb*, 266 Ill. App. 3d at 252-53.

The documents relating to the approval of the plat and the plans for constructing the improvements within the subdivision demonstrate the intent to donate the strip for the public use. The engineering plans for the construction of Cheever Avenue, water mains, and sanitary sewers all contemplated that the entire 66-foot strip be dedicated to public use. Because these engineering plans were approved at essentially the same time the plat was approved and recorded, we presume that the subdividers were aware of these plans and acquiesced in them.

There is also ample evidence of the City's acceptance of the dedication. The engineering plans are strong evidence of the City's intent to accept a dedication of a 66-foot-wide strip at Dunstan Road. Most importantly, the City improved the 16-foot strip with trees, maintained the strip, placed light poles on the strip, and ran electrical wires underneath it. See *City of Greenville v. File*, 130 Ill. App. 2d 878, 884 (1970) (acceptance may be implied from city's acts such as repairing, improving, lighting, and other such evidence of assumption of control). Finally, while the failure to assess taxes, standing alone, does not amount to an acceptance of the dedication, it can, when viewed in connection with other acts, indicate an acceptance. *La Salle National Bank v. City of Chicago*, 19 Ill. App. 3d 883, 887 (1974). There is no dispute that taxes have never been levied against the 16-foot strip and that the county supervisor of assessments did not assign the parcel a tax number until 1992.

Again, although we conclude that the evidence here reveals a common-law dedication of the strip, it may not be used as a road. The common-law dedication created an easement for planting purposes. The strip's current use as a parkway is consistent with the designated use. It would be wholly inconsistent with this use to tear out the parkway so that a road or driveways could be installed giving plaintiffs' property frontage on Dunstan Road.

Although we disagree with the trial court's finding that the City does not have title to the 16-foot strip, we agree that the City is entitled to a judgment as a matter of law because plaintiffs' property does not have the required frontage on a public road.

For the foregoing reasons, we affirm the judgment of the circuit court of Kane County.

Affirmed.

GEIGER, J., concurs.

JUSTICE RATHJE, specially concurring:

I agree with both the majority's conclusion that there was a common-law dedication of the subject planting strip, as well as its determination that the strip's use as a parkway was consistent with the designated use. Thus, I concur with the majority's decision that the property does not have the required frontage on a public road.

However, I do not agree with the majority's view that a statutory dedication occurred here. In *Emalfarb v. Krater*, 266 Ill. App. 3d 243 (1994), this court wrote:

"Pursuant to section 3 of the Plat Act (765 ILCS 205/3 (West 1992)), a statutory dedication occurs when the owner of property files or records a plat which marks or notes on the plat portions of the premises as donated or granted to the public. [Citation.] In order to effect a statutory dedication, the provisions of the Plat Act must be fully complied with, and the plat must clearly indicate a donation to the public of the real estate in question. [Citations.] In determining whether there was a valid statutory dedication under the Plat Act, a court is limited to an examination of the plat and the marks and notations appearing on the plat." 266 Ill. App. 3d at 252.

The instant plat does not contain the language necessary to create a statutory dedication. The term "reserved for owners for planting purposes" does not indicate a donation to the public of the subject strip.

Accordingly, I would decide this case solely on the basis of a common-law dedication having occurred.

Finally, I note that it is unfortunate that the parties' arguments tended to obscure the issue of what entity actually owned the subject strip. If that matter had been better clarified, this court's determination of the case would have been much simpler to achieve.