## Chicago, Burlington and Quincy Railway Company

### *v.*

### Charles Abbott.

*Opinion filed April 17, 1905—Rehearing denied June 8, 1905.*

1. Eminent domain—*act of 1845 requires notice to land owner.* Notice to a land owner of a proceeding by a railroad company to condemn a portion of his land is impliedly required by chapter 92 of the Revised Statutes of 1845, and is expressly required by the subsequent acts of 1852 and 1869 amendatory thereof.

2. Same—*legislature may change procedure for condemning a right of way.* The statutory procedure for acquiring right of way by condemnation, in force when a railroad company was organized, may be changed by the legislature without violating the charter contract between the railroad company and the State.

3. Same—*record of condemnation proceeding not color of title.* The record of a condemnation proceeding by a railroad company to acquire a right of way does not constitute color of title, within the meaning of section 6 of the Limitation act. (*Converse* v. *Calumet River Railway Co.* 195 Ill. 204, followed.)

4. Limitations—*possession of fenced right of way does not carry possession of adjoining land.* Possession by a railroad company of a strip of land fenced in by it as right of way does not carry with it possession of a strip of adjoining land outside of the fences and enclosed by an adjoining owner with his land, and held by him exclusively and adversely under claim of right for a period of over twenty years.

5. Estoppel—*recital in mortgage cannot be invoked by stranger claiming hostile title.* Recitals in a deed or conveyance cannot be invoked, as creating an estoppel, by a stranger to the conveyance who is claiming by an independent and hostile title.

6. Evidence—*when refusal to admit tax receipts is proper.* In an action of ejectment against a railroad company refusal to admit tax receipts showing payment of taxes by the defendant is proper, where there is no proof of title or color of title with which such payment can be connected.

Appeal from the Circuit Court of Hancock county; the Hon. John A. Gray, Judge, presiding.

Appellee obtained a judgment in an action of ejectment against appellant in the Hancock circuit court at the October term, 1904, and appellant prosecutes this appeal and assigns errors upon the record.

At the hearing appellant offered twelve propositions of law to be held or refused by the court, and the court held two of them and refused all the others, and appellant excepted, and the questions of law are by them presented. Other questions were raised as to the admissibility and rejection of the evidence offered, and will be referred to later in this opinion.

The land in controversy is in the north-east quarter of section 35, in township 6, range 7, west, in Hancock county, and lies along the eastern boundary line of appellant's right of way, and is a strip forty-nine and one-half feet wide and nearly half a mile long. It lies north of appellant's depot grounds, and adjoining the same, at Ferris, a station in said county.

The declaration contained a number of counts, but the judgment was upon the seventh count. No question is made as to the pleadings.

At Ferris station is the crossing of appellant's road with the Toledo, Peoria and Western railroad. An affidavit of common source of title was filed by appellee and not denied by appellant. The record disclosed that in 1859 Franklin Anderson, of Green county, Kentucky, purchased the north-east quarter of said section 35, of which the land in controversy is a part, and obtained a deed to it, which was placed of record in Hancock county August 24, 1859. In the spring of 1874 said Anderson fenced his land and included within his enclosure the strip of land in controversy, and by himself and tenants had actual and open possession thereof thence to his death. In 1891 said Franklin Anderson died intestate, and left him surviving James G. Anderson and Mary Vaughn, his children and only heirs-at-law, and they, through their tenants, had possession of the land from the death of their father until the fall of 1894, when appellant, who up to that

time had had its right of way fenced, elevated or raised the fence along the eastern boundary of its right of way and moved the same forty-nine and one-half feet east, taking in the strip of ground in controversy. Franklin Anderson also died seized of the south-east quarter of the same section. In September, 1898, the son and daughter of Franklin Anderson made partition of said lands by deeds of release, Mary Vaughn taking the south-east quarter and the said James G. Anderson the north-east quarter of said section. Mary Vaughn then conveyed to appellee the south-east quarter, and on March 18, 1901, the son, James G. Anderson, conveyed the north-east quarter of said section to the appellee, "except the land then owned and occupied by the two railroad companies." On March 13, 1903, James G. Anderson and Mary Vaughn, by their quit-claim deed of that date, for the consideration of $100, conveyed to appellee all their right, title and interest, of every kind and nature, in and to the quarter section upon which the tract in controversy is. By the above conveyances appellee became seized of all the land, subject to whatever legal rights, if any, the appellant had in the same. The strip in controversy is no part of the right of way of appellant.

By an act of the legislature of this State approved March 8, 1867, the Carthage and Burlington Railroad Company was incorporated, and given authority to construct a railroad from Carthage, in Hancock county, to East Burlington, in Henderson county, and was authorized to acquire as right of way a strip one hundred feet wide the length of the road, and such other grounds as were necessary for depots, side-tracks, shops and other appurtenances of said road, and if the same could not be had by agreement with the owner or owners of the ground, the company was authorized to proceed to condemn the same by virtue of any public laws of this State. There was also conferred upon it by the act "all the powers conferred upon  *  *  *  Illinois and Southern Iowa Railroad Company by virtue of any laws of this State."

Appellant is the successor in ownership of the Carthage and Burlington Railroad Company. The road was built in the years 1869 and 1870, and appellant claims that the strip of land in question was obtained by the Carthage and Burlington Railroad Company by condemnation for depot or "Y" and switch purposes, in addition to its right of way of one hundred feet. In support of this contention appellant offered in evidence a petition for condemnation filed with one John M. Ferris, a justice of the peace of Hancock county, on April 26, 1870, to which was attached a copy of the charter act of said Carthage and Burlington Railroad Company. The petition, by plat and other sufficient description, called for the land in controversy. Appellant also offered the record or docket of the justice of the peace which contained the entries made by him, together with a copy of the alleged report of three householders of said county who had been summoned and sworn to examine the ground and assess the damages which the owners of property would sustain. Appellee objected to the introduction of the petition, the justice's docket and the report of the householders, and the court sustained the objection, and appellant excepted.

The ground of the objection by appellee was, that the record failed to show the service of process or notice upon the owners of the land, and that the report of the householders or commission appointed by the justice to assess the damages did not show that the land in controversy was taken into consideration or that the damages were assessed or considered in any manner by them. The particular strip or tract in controversy is in no way described in the report. As to what the report covers or the commissioners did in estimating or assessing the damages the report states: "That taking and allowing for use of said company for right of way of its said railroad a strip of land one hundred feet wide, or fifty feet wide on each side of the center line of the main track of said railroad, and taking and allowing for right of way of the side or 'Y' track connecting the main track

of said railroad with the track of the Toledo, Wabash and Western railway a strip of land sixteen feet wide, or eight feet wide on each side of the center line of said side or 'Y' track, they do assess the damages which they believe the owner or owners of said lots and tracts of land have sustained or will sustain, over and above the additional value which said lands have derived or will derive from the construction of said railroad, in the manner following." It is admitted that the expression contained in the above clause, "taking and allowing for right of way of the side or 'Y' track connecting the main track of said railroad with the track of the Toledo, Wabash and Western railway a strip of land sixteen feet wide, or eight feet wide on each side of the center line of said side or 'Y' track," does not refer to the land in controversy, but does refer to a side or "Y" track at Carthage, in said county. The only other entry in the report with reference to the land is: "Name of owners, Franklin Anderson; description of lot and land, east half section 35, T. 6, N., R. 7, W.; No. of acres, ......; amount of damages, none."

Appellant insists that the action of the court in refusing to admit the above evidence was error; that it was not necessary that notice be given to the land owner, as none was required by the statute, and that if the report of the commissioners is deficient in the respect contended by appellee, it is cured by a reference to the petition, which, by plats and other description, sufficiently pointed out the tract in controversy. In support of this contention appellant says that the proceeding was under the act of 1845, entitled "Right of Way," and designated in the statutes as chapter 92, (Rev. Stat. 1845, p. 475;) that the act chartering the Illinois and Southern Iowa Railroad Company provided, among other things, that it might proceed to condemn land under said chapter 92 of the Revised Statutes, entitled "Right of Way;" that said last named railroad was chartered by special act of February 12, 1857, (Laws of 1857, p. 524,) and as the act incorporating

the Carthage and Burlington Railroad Company conferred
upon it all the powers of the Illinois and Southern Iowa
Railroad Company, the power to condemn land under the act
of 1845 was as much conferred upon the said Carthage and
Burlington Railroad Company as if so expressly provided
in the act. To this contention appellee replies, that although
it is not so expressly stated in the act of 1845, nevertheless
a proper construction of that act requires that notice should
be given to the land owner, and that, whether that posi-
tion be sustained or not, the act of 1852, (Laws of 1852,
p. 146,) which was amendatory of the act of 1845, was in
force at the time the charters of the Carthage and Burlington
Railroad Company and of the Illinois and Southern Iowa
Railroad Company were enacted, and that the latter act re-
quired, by express terms, notice to the land owners, and that
when the Carthage and Burlington Railroad Company, in
April, 1870, filed its petition for condemnation, the act of
March 8, 1869, (Laws of 1869, p. 373,) which amended the
act of 1852, was in force, and by section 2 of that act it
is provided: "The provisions of this act, and of the act to
which this is an amendment, shall apply to all proceedings
for the condemnation of lands by any railroad company here-
tofore incorporated or which may hereafter be incorporated,
except such proceedings as have been already commenced
and are now pending." Appellee makes the still broader
contention that the consideration of all these acts is imma-
terial, because the court must see, upon an inspection of the
record, that the evidence offered was properly rejected, be-
cause the land in question was not mentioned in the report
of the commission and the damages to it were not assessed
or estimated. The appellee also takes the position that if it
should be held that the petition and docket entries, including
the report of the householders, had before the justice of the
peace, should have been admitted in evidence, it was harm-
less error for the court to exclude them, because the evidence
clearly shows that the appellee and his grantors held open,

exclusive, notorious and hostile possession of the strip of ground in controversy from the spring of 1874 to the fall of 1894; that appellee and his grantors claimed to own said land, and farmed and used and treated it as their own land, and not in subservience to the right or claim of appellant or any other person; that thereby, even though appellant had acquired a title, in fee or otherwise, by the supposed condemnation proceeding, appellee and his grantors had acquired a fee to the land, under section 1 of the Limitation act, prior to the time that appellant took possession of the same, and that whatever title, color or fee appellant had prior to 1874 was lost by the adverse possession of the appellee and his grantors.

G. Edmunds, David E. Mack, and Wm. C. Hooker, for appellant.

Charles J. Scofield, for appellee.

Mr. Chief Justice Ricks delivered the opinion of the court:

We are of opinion that the court did not err in excluding the proceedings before the justice of the peace for two reasons: First, because there was no notice of the proceeding given to the owner of the land; and second, because the report of the commissioners, as we think, shows that they did not take into consideration or assess or estimate the damages on the tract of land in controversy, and that whatever effect could be given to a proceeding such as that, however regular upon its face, it is quite clear that the proceeding in question could not have been given the effect of conveying either title or color of title.

The contention of appellant that the act of incorporation of the Carthage and Burlington Railroad Company authorized it to proceed under the act of 1845, designated as chapter 92 of the Revised Statutes of 1845, and that that act did

not require notice to the land owner, cannot be admitted. To so hold would, we think, force us to hold that the statute itself was unconstitutional and void.

As early as 1871 the question of the effect of the act of 1845, and its requirement with reference to notice, was considered by this court in *Peoria and Rock Island Railway Co. v. Warner,* 61 Ill. 52. In that case the railroad company had taken possession of certain lands of plaintiff for right of way, and plaintiff brought an action of trespass. The railroad company attempted to justify by setting up a proceeding similar to the one in question, but did not in the plea aver notice to the land owner. The plea was demurred to and the demurrer sustained. In that case it was held that while the act of 1845 remained in force, in so far as it was applicable to matters falling within it, it was modified by the act of 1852, which was amendatory of it; and it was also held that, even without the amendment of 1852, the provisions of the act itself implied that notice should be given to the land owner. We are not prepared to depart from the law as laid down in that case; and in addition to what is there said we may say that before the proceeding here in question was begun, the act of March 8, 1869, from which a quotation is made in the statement of this case, was in full force and was an amendment to the act of 1852, and by its express provisions made the provisions of the act of 1852 applicable to all proceedings for condemnation of lands by any railroad company theretofore or thereafter incorporated, except where the proceedings had been already commenced. The proceeding in question had not been commenced when that amendment was made, and as the act of 1852 expressly required notice by personal service upon resident owners and notice by publication to non-resident owners, the proceeding in question was fatally defective.

The contention of appellant that by the act incorporating the Illinois and Southern Iowa Railroad Company that company was expressly authorized to proceed under chapter 92

of the Revised Statutes of 1845, (being the act of 1845,) and that the act incorporating the Carthage and Burlington Railroad Company conferred upon it all the powers of the former company, and that therefore the Carthage and Burlington Railroad Company, by special grant, was authorized to proceed under the act of 1845 unaffected by the act of 1852, cannot be admitted. We very much doubt that when the act incorporating the Carthage and Burlington Railroad Company was passed and the provision giving it the same powers as the Illinois and Southern Iowa Railroad Company was placed in the charter of the said Carthage and Burlington Railroad Company, the legislature intended to or had in mind the provision with reference to condemnation, for in the act incorporating the Carthage and Burlington Railroad Company it is expressly provided in relation to the acquirement of right of way and lands for other purposes, that "said company may proceed to condemn the same by virtue of any public law of this State." With that provision in its charter it might proceed under so much of the act of 1845 as was in operation and as modified by the act of 1852, and the two acts made ample provision for the proceedings necessary to acquire such lands as were needed for railroad purposes.

The contention that to apply the acts of 1852 and of 1869 would be in violation of the charter contract between the Carthage and Burlington Railroad Company and the State is, as we think, unsound and cannot be allowed to prevail. The provision relates to the procedure for the acquirement of the right of way and the lands necessary for the use of the railroad company, and can be looked upon in no other light than supplying a remedy. It did not affect the right of the railroad company to exercise the powers and functions given it by its charter, the main purpose of which was to construct and operate a railroad, but, according to the contention of appellant, designated a certain statute under which it might proceed to acquire property from the individual owners for its use. The power of the State to alter the remedy granted

in certain cases has long been recognized and seems to be fully established upon the highest authority. (Cooley's Const. Lim.—7th ed.—405, 406.) And in *Mississippi Railway Co.* v. *McDonald,* 12 Heisk. 54, the Supreme Court of Tennessee had the identical question before it, and it was there held that the provision in the charter prescribing the manner in which it might take lands for its purposes only gave a remedy which might be altered by the legislature.

Nor do we think a reasonable construction and reading of the report of the householders made to the justice of the peace show or tend to show that the land involved in this suit was taken into consideration by them. If it was, it is clear that they did not determine what, if any, damages the owner was entitled to for or on account of it. As we construe that report, it expressly points out that it estimates and fixes the damages for the one hundred-foot strip of right of way and for the "Y" at Carthage, and for no other lands.

If we were willing to admit the contention of appellant that this proceeding should have been received in evidence, we would still feel constrained to hold that it was neither evidence of title nor of color of title such as would support any claim asserted by appellant, under the Statute of Limitations, to the land. The effect of such proceedings and the denial of the proposition that they constitute color of title were fully discussed and considered in the case of *Converse* v. *Calumet River Railway Co.* 195 Ill. 204, and the authorities relied upon by appellant were there brought to the attention of the court, were considered, distinguished, and held not applicable under the sixth section of our Limitation act. We deem it unnecessary, in view of the full consideration there given the question, to further discuss it here.

About the year 1869 the right of way of appellant's road was fenced and the strip in question was not included within its enclosure, and the possession by appellant of the one hundred-foot strip of right of way that was within its fences did not carry with it possession of land lying outside of that

enclosure and claimed by it as against an adverse claimant who was in actual, open, notorious and hostile possession for more than twenty years. If the proceeding under which the appellant claims had been not only formal, but valid, and it had acquired the fee to the land, appellee and his grantors could have, by placing the same within their enclosure and holding it for twenty years under claim of right, acquired title under the limitation laws of this State. *Illinois Central Railroad Co.* v. *Moore,* 160 Ill. 9; *Illinois Central Railroad Co.* v. *Houghton,* 126 id. 233; *Donahue* v. *Illinois Central Railroad Co.* 165 id. 640; *Illinois Central Railroad Co.* v. *Wakefield,* 173 id. 564.

Appellant suggests that the evidence in the record does not make it clear that appellee and his grantors had adverse possession of the land for twenty years. That appellee's grantor had his farm fenced in the spring of 1874, and that he and his tenants, from that time to the time the appellant moved its fence out and included this strip, had the exclusive use and control of it as part of the general farm is not questioned. The only point made is, that the particular time appellant moved its fence out, whether in 1893 or 1894, is made doubtful by the witnesses. We think not, however. Upon that question two witnesses testified, both called by appellant. The first was Joseph Noble, who stated that he was foreman of the Carthage branch of appellant's road from 1868 to two years ago; that the fence along the right of way of appellant's road, fifty feet each side from the center of the main track, was built in 1868 or 1869, and remained in that same position until the year 1894. Appellant also introduced as a witness James Johns, its section foreman, who testified that he assisted Noble in moving the fence from the right of way out across the strip in question, and that it was done in the year 1893 or 1894. Noble states expressly that it was done in 1894, and ten years prior to the time that he was testifying as a witness, and we do not think there is any room for doubt upon that question of fact.

As appellant had neither title nor color of title by virtue of the proceeding before the justice of the peace the question of the payment of taxes was not material, and it was not error for the court to refuse to admit in evidence the tax receipts; nor was it error to refuse to admit mortgages made by appellee to a third party after he had become the purchaser of the land in 1901, in which there was reserved from the operation of the mortgages "the land owned by said companies and occupied by them for depot grounds and switch yards of the said quarter section," (referring to appellant and the Toledo, Peoria and Western Railroad Company,) as there was no description of any land in the mortgage, and if the recitals could operate by way of estoppel it could only be so where there was such description as identified the particular land in question. (24 Am. & Eng. Ency. of Law,—2d ed.—66.) But in the case at bar the rule of estoppel by recitals had no place. The mortgages were to one Mack, a resident of Carthage, who was a stranger to this proceeding, and the appellant was likewise a stranger to the mortgages. Recitals in deeds and conveyances may operate as an estoppel to the parties to such deeds and in favor of those claiming in privity of title with them, but cannot be invoked by a stranger to such conveyance who is claiming by an independent and hostile title. 1 Greenleaf on Evidence, sec. 211; 24 Am. & Eng. Ency. of Law, (2d ed.) 61; *Stalford* v. *Goldring,* 197 Ill. 156.

The holdings of the court on the propositions of law were in keeping with the view we have expressed concerning this case, and there was no error committed by the court in that regard.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*