GENERAL AUTO SERVICE STATION, Plaintiff-Appellant, v. SAM MANIATIS *et al.*, Defendants-Appellees.

First District (5th Division) No. 1—01—0330

Opinion filed March 8, 2002.

538

Grey, Grey & Baltz, P.C., of Chicago (Thomas E. Baltz, of counsel), for appellant.

Patzik, Frank & Samotny Ltd., of Chicago (Sheryl Jaffee Halpern, of counsel), for appellee State-Elm, Inc.

Mara S. Georges, Corporation Counsel, of Chicago (Lawrence Rosenthal, Benna Ruth Solomon, and Suzanne M. Loose, Assistant Corporation Counsel, of counsel), for appellee City of Chicago.

PRESIDING JUSTICE CAMPBELL delivered the opinion of the court:

Plaintiff General Auto Service Station (GASS) appeals an order of the circuit court of Cook County granting summary judgment to defendant City of Chicago (City) on count I of plaintiff's complaint, which sought a declaration that a dead-end alley near the intersection of State and Elm Streets in Chicago is privately owned by the owners of the properties surrounding the alley.[1] This appeal is a continuation of the litigation previously before this court in *Heerey v. Maniatis*, 192 Ill. App. 3d 868, 549 N.E.2d 691 (1989).

Although the facts of the case are largely detailed in the *Heerey* opinion, it is useful to review them and the prior proceedings briefly here. The first division of the property at issue appearing in the record on appeal, referred to as the "Assessor's Division," was recorded on July 28, 1860. The plat of the Assessor's Division depicts lots bounded by Elm and Cedar Streets on the north and south, by Lake Michigan on the east, and Green Bay Street (later referred to as Rush Street and State Street) on the west.

On November 25, 1882, George Healy filed a plat of subdivision (Healy's Subdivision), extending to Lake Shore Drive on the east, which subdivided lot 1 of the Assessor's Division into 34 lots. Healy's Subdivision contains a strip of land abutting lots 1 through 3 on the west and lot 4 on the east. The strip runs to what was lot 2 of the Assessor's Division on the south and has an open boundary with Elm Street on the north. The plat shows that the strip is 12 feet wide. Healy's Subdivision names the streets bounding the property, but does not name or otherwise refer to the strip as an alley. The northernmost part of this strip, measuring 12 feet by 49.36 feet, is the "alley" at issue here.

In 1891, Healy conveyed lot 4 of Healy's Subdivision to William Seymour "in consideration of Seven Thousand and Five Hundred Dollars ($7500) in hand paid." The conveyance from Healy to Seymour made no mention of the alley. Healy died in 1894; his real estate holdings were bequeathed to his wife Louisa. On April 13, 1899, William and Katherine Seymour conveyed lot 4 to Suel and Florence Joss. A restrictive covenant contained in the April 1899 deed stated as follows:

[1]Defendant State-Elm, Inc., a necessary party to the action, filed a brief adopting the brief of plaintiff GASS. The remaining defendants are not parties to this appeal.

"A part of the consideration herein is that the grantee herein and all persons holding under and through him [of lot 4] shall never join in any petition to vacate the public alley next west of those premises, but such alley shall forever remain a public alley situated in the City of Chicago."

On September 5, 1899, the Josses conveyed lot 4 to Thomas Skinner; the deed did not mention the restrictive covenant, but referred to lot 4 as "being the property on the south side of Elm Street next east of the public alley." A deed apparently recorded in January 1900 (insofar as the photocopy thereof is legible), conveying lot 4 from Thomas and Emily Skinner to Sherman T. Kimbell, also referred to lot 4 as "on the south side of Elm Street next east of the public alley about 120 feet east of State Street."

It is undisputed that the deeds of the Josses, Skinner and Kimbell were subject to a $7,500 debt owed to Louisa Healy, which apparently was not paid. In 1901, Healy's widow sued Seymour, Joss, Skinner, Kimbell and others, reacquiring lot 4 through a judicial sale. The restrictive covenant in the April 1899 deed does not appear in the deed obtained by Louisa Healy in the judicial sale. The deeds for lot 4 recorded thereafter do not mention the restrictive covenant or the alley.

In 1928, another plat was filed by a successor owner of lot 4, which described the alley as a private alley. This plat, referred to as the "Owner's Division," expressly excludes the area taken by lots 1 through 3 of Healy's Subdivision, but does include lot 4 and the lot south of the alley.

On February 6, 1985, Bernard A. Heerey, GASS's predecessor-in-interest to property including lot 4, filed a three-count complaint against Sam Maniatis, the beneficial owner of other property abutting the disputed alley, the City, and the Western National Bank of Cicero as the title owner of Maniatis' property. Count I of Heerey's complaint sought a declaration that the alley is privately owned. The record shows that in January 1985, when Heerey's attorney went to the department of maps to find out who was the private owner of the alley, the superintendent of maps took a pen and crossed out the word "private" and wrote in the word "public" on the 1928 plat. An affidavit by the superintendent of maps states that he corrected the City's official maps to reflect this change.

On March 29, 1988, the trial court granted summary judgment in favor of defendant Maniatis and against Heerey on cross-motions for summary judgment, dismissing Heerey's complaint on the ground that Heerey was prohibited from litigating to have the alley declared private by the April 1899 restrictive covenant. The trial court expressly declined to reach the issue of the public or private status of the alley.

On appeal, this court held that the trial court had misapplied the restrictive covenant in holding that it barred Heerey from seeking his declaratory action, because his complaint could not be construed as an action to vacate a public alley. *Heerey*, 192 Ill. App. 3d at 871-72, 549 N.E.2d at 693. This court also held that genuine issues of material fact existed and therefore the court erred in granting summary judgment to Maniatis. *Heerey*, 192 Ill. App. 3d at 871-72, 549 N.E.2d at 693. In particular, this court ruled "that 'if' the alley is public and 'if' the restrictive covenant is binding on Heerey" were both material questions of fact, which precluded entry of summary judgment. *Heerey*, 192 Ill. App. 3d at 872, 549 N.E.2d at 694. After reviewing the history of the property at issue, this court concluded that "the foregoing facts do not support a finding *beyond question* that the alley is public, apparently the conclusion the trial court indirectly reached in its interpretation of the restrictive covenant as a bar to Heerey's action." (Emphasis in original.) *Heerey*, 192 Ill. App. 3d at 873, 549 N.E.2d at 694. This court went on to "observe that even assuming *arguendo* that the language of the restrictive covenant 'intended' that the alley be public rather than private, it is unclear whether defendants' position can be supported upon a common law or statutory dedication of the alley, especially since the trial court did not reach this issue." *Heerey*, 192 Ill. App. 3d at 873, 549 N.E.2d at 694. Accordingly, this court remanded the case to the trial court with directions that it declare the ownership status of the alley and, thereafter, conduct hearings on counts II and III of Heerey's complaint. *Heerey*, 192 Ill. App. 3d at 873, 549 N.E.2d at 695.

It is undisputed that at some unspecified time following remand, Heerey apparently voluntarily dismissed his suit, refiling the action on or about December 26, 1995. The parties here have raised no issue arising out of the voluntary dismissal and subsequent refiling.

On November 16, 1998, Heerey moved for summary judgment on count I of the refiled complaint, which sought the same declaratory relief he had sought in the initial suit. The City filed its response on January 20, 1999, arguing that summary judgment should be entered in its favor. Both parties submitted evidence regarding the history of the property at issue.

Both parties also relied in part on deposition testimony by Maniatis taken in August 1985 regarding the alley. Maniatis testified that in winter, the alley was cleared of accumulated snow and ice by restaurant employees. Maniatis also testified that he had seen the City plow the alley to clean up snow. Maniatis testified that he had never paid real estate taxes on the alley property. Maniatis testified that members of the public would walk into the alley at lunchtime to eat

fast food procured elsewhere, which would require the area to be cleaned.

Maniatis further testified that the alley is semi-paved and that the City paved its alley. Heerey stated in an October 26, 1998, affidavit that from the late 1940s through 1997, he had walked by and viewed the alley on an almost daily basis, but never saw the City remove trash from the alley or perform resurfacing or repair work there. Heerey attached four photographs as exhibits to his affidavit depicting the alley and surrounding properties as they appeared on October 7, 1998. These photographs appear to show that the alley has a cracked concrete surface from its dead end at the south to the public sidewalk, whereas the portion of the strip of land interrupting the sidewalk appears to be surfaced with blacktop.

Heerey also submitted affidavits by Kai Joy, a licensed private investigator hired to observe activity in the alley, and Mirzet Biser, who provided janitorial services and handled tenant complaints for two of Heerey's buildings. Joy stated that the vast majority of the occupants of vehicles parking in the alley entered the rear door of the restaurant abutting the west side of the alley. Biser stated that, having worked and lived on the block where the alley is located, he had observed since January 1990 that certain cars had been parking in the alley regularly and that the drivers of these cars appeared to be employees of businesses on the property then owned by Maniatis,[2] because Biser observed them coming and going into the building.

The City submitted a certified copy of a public record of the office of the Cook County assessor, dated September 29, 1993. The City's memorandum in support of the cross-motion for summary judgment relied on this record to state that the alley has no permanent index number; the public record does not appear to show such a number. Nor does the public record refer to any particular dates, other than the date of certification. The City's memorandum in support of the cross-motion for summary judgment also relied on this record to state that the alley has not been assessed; the public record contains entries entitled ''assessed valuation'' for both the land and improvements thereto.

The City also stated in its memorandum that there was no showing that any of the adjoining property owners had applied for a driveway permit typically required by the municipal code of Chicago.

---

[2]It is undisputed that defendant State-Elm, Inc., is now the beneficial owner of the property previously owned by Maniatis and that, after two assignments, GASS is the successor-in-interest to Heerey's interest in the lawsuit. GASS was substituted as the plaintiff in this case on March 24, 1999.

On April 9, 1999, the trial court entered an order denying GASS's motion for summary judgment. GASS moved for reconsideration. On November 20, 2000, the trial court entered an order denying the motion for reconsideration and granting summary judgment in favor of the City. GASS again moved for reconsideration or clarification. On December 29, 2000, the trial court entered an order denying the motion for reconsideration, finding that the alley was public by way of common law dedication, and finding that there was no just reason to delay enforcement or appeal of the order. On January 17, 2001, the trial court entered an order finding that there was no just reason to delay enforcement or appeal of the April 9, 1999, and November 20, 2000, orders. GASS filed a notice of appeal to this court on January 23, 2001.

## I

■■ GASS argues that the trial court erred in granting summary judgment in favor of the City and in denying its motion for summary judgment. The denial of a motion for summary judgment is ordinarily not a final order and is not appealable standing alone, but this court may properly review an order denying a motion for summary judgment if, as here, the appeal from that order is brought in conjunction with the appeal from an order granting a cross-motion for summary judgment on the same claim. *Arangold Corp. v. Zehnder*, 187 Ill. 2d 341, 358, 718 N.E.2d 191, 201 (1999). In ruling upon a summary judgment motion, the evidence is reviewed *de novo* and construed in the light most favorable to the nonmovant. *E.g.*, *Walker v. Rogers*, 272 Ill. App. 3d 86, 89, 650 N.E.2d 272, 274 (1995). Summary judgment is properly entered when the pleadings, depositions, admissions, and affidavits fail to establish a genuine issue of material fact and the movant is entitled to judgment as a matter of law. 735 ILCS 5/2—1005(c) (West 1998). The trial court may grant summary judgment: (1) when the movant disproves the nonmovant's case by introducing evidence that, if uncontroverted, would entitle the movant to judgment as a matter of law (see *Purtill v. Hess*, 111 Ill. 2d 229, 240-41, 489 N.E.2d 867, 871 (1986)); or (2) when the movant can establish the nonmovant lacks sufficient evidence to prove an essential element of the cause of action (see *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 91 L. Ed. 2d 265, 273, 106 S. Ct. 2548, 2552 (1986); *Rice v. AAA Aerostar, Inc.*, 294 Ill. App. 3d 801, 805, 690 N.E.2d 1067, 1070 (1998); *Kimbrough v. Jewel Cos.*, 92 Ill. App. 3d 813, 817, 416 N.E.2d 328, 331 (1981)).

The parties do not dispute the standard of review, but they dispute the scope of review in this case. As noted above, the trial court granted summary judgment in favor of the City, specifically finding that there

had been a common-law dedication. Nevertheless, in this appeal, the City primarily argues that this court should affirm on the alternative ground that there was a statutory dedication of the alley. The City also argues that GASS is estopped to deny the alley is public, although the City made only a passing reference to this argument in the trial court.

The City relies on the rule that this court may affirm a summary judgment for any reason that properly appears in the record, regardless of whether that reason is the reason relied upon by the trial court. *Leavitt v. Farwell Tower Ltd. Partnership*, 252 Ill. App. 3d 260, 265, 625 N.E.2d 48, 52 (1993). GASS responds that where the trial court expressly or implicitly makes a finding against a defense, in the absence of a cross-appeal, an appellee will not be permitted to challenge or to ask the reviewing court to modify a portion of the trial court's order, thereby confining the appeal to a consideration of the errors raised by the appellant. See *People ex rel. Wray v. Brassard*, 226 Ill. App. 3d 1007, 1011, 589 N.E.2d 1012, 1015 (1992).

■ Our supreme court has held that a party cannot complain of error which does not prejudicially affect it; one who has obtained by judgment all that has been asked for in the trial court cannot appeal from the judgment. *Material Service Corp. v. Department of Revenue*, 98 Ill. 2d 382, 386, 457 N.E.2d 9, 12 (1983). Findings of the trial court adverse to the appellee do not require the appellee's cross-appeal if the judgment of the trial court was not at least in part against the appellee. *Material Service Corp.*, 98 Ill. 2d at 387, 457 N.E.2d at 12. It follows that findings adverse to the appellee require a cross-appeal if the judgment was in part against the appellee.

In this case, Heerey filed a motion for summary judgment on count I of his amended complaint, which sought a declaration that he was the owner in fee simple of 50% of the alley, free and clear of any claims, easements or encumbrances arising from, by or through defendants, specifically including the City. Indeed, count I separately sought a declaration the City had no rights of any kind in the alley. The City's response to plaintiff's motion for partial summary judgment, which also served as a cross-motion for summary judgment, primarily argued that there had been a statutory dedication or, in the alternative, a common-law dedication of the alley.

■ The trial court entered summary judgment for the City, including the specific finding "that the alley is public by way of common law dedication." A statutory dedication vests the fee to the premises in the public, subject to acceptance, whereas a common-law dedication keeps the fee vested in the donor, burdened with an easement over the way in question and subject to the acceptance of the easement by the public. *Clokey v. Wabash Ry. Co.*, 353 Ill. 349, 360-61, 187 N.E. 475, 480

(1933). The City primarily urged the trial court to rule that there had been a statutory dedication that would vest the fee to the premises in the City. The trial court found that there had been a common-law dedication, which leaves the fee vested in the donor.

■ In sum, while the trial court ruled in favor of the City, it did not award the City all that it sought.[3] As the City did not file a cross-appeal, this court's review is limited to a consideration of the errors raised by GASS as the appellant.[4]

---

[3]The City's emergency motion to cite additional authority discusses *In re Application of County Collector*, 44 Ill. App. 3d 327, 357 N.E.2d 1302 (1976), in which this court stated that "[f]or practical purposes, the possession and control the Village has over the land as a result of the perpetual easement is not unlike that an owner of fee simple title would have." 44 Ill. App. 3d at 332, 357 N.E.2d at 1307. Thus, the court concluded that a village with an easement from a common-law dedication was an "owner" within the meaning of the Revenue Act (Ill. Rev. Stat. 1971, ch. 120, pars. 500.6, 500.9), thereby exempting the burdened lot from real estate taxation. In this case, however, the City has cited no authority for the proposition that a broad interpretation of the term "owner" in the Revenue Act by this court can overturn well-established precedent from our supreme court regarding the actual disposition of title following different types of dedication.

This court also granted a motion to cite additional authority filed by the City after oral argument in this case. In *Veazey v. Doherty*, 327 Ill. App. 3d 522 (2002), this court held that the Illinois Department of Employment Security (Department) could argue on appeal, without filing a cross-appeal, that plaintiff failed to comply with the Administrative Review Law (735 ILCS 5/3—101 *et seq.* (West 2000)), despite the fact that the trial court denied a motion to dismiss on that basis. This court noted that the trial court ultimately ruled in the Department's favor, upholding its decision that the plaintiff was not entitled to unemployment benefits. This case is distinguishable from *Veazey*, as the Department there achieved a complete victory on the merits. In contrast, the judgment here did not vest fee simple in the City. Accordingly, the City was not awarded all of the relief it sought on the merits.

[4]The City's argument that GASS is estopped to deny that the strip of land is a "public alley" because that term appears in the 1899 restrictive covenant and two subsequent deeds might have been considered to the extent that a "public alley" arguably could refer to either type of dedication. However, the City's brief on this point makes clear that the City's position is that GASS is estopped to deny *any* interest or title in the alley, which is consistent with its claim of a statutory dedication, not with a claim of a common-law dedication. Accordingly, the City was required to cross-appeal to raise the argument.

Moreover, deeds and conveyances may operate as an estoppel to the parties to such deeds and in favor of those claiming in privity of title with them, but cannot be invoked by a stranger to such conveyance who is claiming by an

## II

■ GASS contends that the trial court erred in entering summary judgment on the ground that there had been a common law dedication of the alley to the City.[5] The dedication of an alley can be either a statutory dedication, which is created by the recording of a plat, or a common-law dedication, which is shown by the grantor's actions. *Kirnbauer v. Cook County Forest Preserve District*, 215 Ill. App. 3d 1013, 1020, 576 N.E.2d 168, 173 (1991); see *Kimball v. City of Chicago*, 253 Ill. 105, 110, 97 N.E. 257, 258 (1911) ("[T]here is no difference between the rule applicable to the dedication of an alley and that applicable to the dedication of a street ***"). A statutory dedication is created by a particular form of the instrument recorded, whereas a common-law dedication may be made by a written instrument or may be evidenced by acts and declarations without a writing. *Hooper v. Haas*, 332 Ill. 561, 567, 164 N.E. 23, 25 (1928); *First Illinois Bank of Wilmette v. Valentine*, 250 Ill. App. 3d 1080, 1091, 619 N.E.2d 834, 841 (1993).

■ As this court noted in the first appeal in this litigation, a common-law dedication must be established by clear and unequivocal evidence of: (1) an intent to donate the property for the public use; and (2) acceptance by the public. *Heerey*, 192 Ill. App. 3d at 873, 549 N.E.2d at 694. A survey and plat, alone, are sufficient to establish a dedication, if it is evident from the face of the plat it was the intention of the proprietor to set apart certain grounds for public use. *Kimball*,

---

independent and hostile title. *Chicago, Burlington & Quincy Ry. Co. v. Abbott*, 215 Ill. 416, 427, 74 N.E. 412, 416 (1905); *Stalford v. Goldring*, 197 Ill. 156, 168-69, 64 N.E. 395, 400 (1902). In this case, the City was a stranger to the deeds at issue. Thus, the City could not assert that GASS is estopped by the recitals in the deeds.

[5]We note that where an initial appeal was from a summary judgment for defendant, and the appellate court reverses because of the existence of factual issues, the trial court is usually precluded from entering another summary judgment for the defendant. See, *e.g.*, *Crane Paper Stock Co. v. Chicago & Northwestern Ry. Co.*, 63 Ill. 2d 61, 70, 344 N.E.2d 461, 466 (1976). In *Heerey*, this court reversed a summary judgment, but specifically noted that it was unclear whether the defendants' position was supported by a common-law or statutory dedication of the alley, and directed the trial court to examine the elements of these theories on remand. *Heerey*, 192 Ill. App. 3d at 873, 549 N.E.2d at 694-95. The parties, in moving for summary judgment, submitted not only the evidence regarding the history of the property mentioned in *Heerey*, but also deposition testimony, affidavits and other documents bearing on the dedication issues. Accordingly, from a purely procedural perspective, it was not improper for the trial court to consider disposing of count I by summary judgment again on remand.

253 Ill. at 109-11, 97 N.E. at 259. There is no rule of law that forbids the subdivision of land so as to establish over it only private ways for the sole benefit of those who may become owners of lots in the subdivision and in which the public, as such, will have no interest. *City of Chicago v. Drexel*, 141 Ill. 89, 106, 30 N.E. 774, 779-80 (1892).

■ In this case, as in *Kimball*, the plat shows a strip of land that has an open end intersecting with a marked street. The dimensions of the strip are also marked on the plat. Moreover, the strip of land is unnumbered, as was the case in *Kimball* and *Kennedy v. Town of Normal*, 359 Ill. 306, 309-10, 194 N.E. 576, 578 (1934). The strip of land is not marked as an alley, but this fact does not preclude a showing of donative intent. See 359 Ill. at 309-10, 194 N.E. at 578. The fact that the alley here is a dead end, rather than one connecting streets, may distinguish this case from cases like *Kimball*, as it arguably suggests that it was intended to serve the numbered lots, rather than the public generally. However, the nature of the alley will be considered below.

The City points to the deeds referring to the "public alley" as evidence of donative intent. However, GASS notes that the validity of title must be determined by the law and not by any view that may have been entertained by those through whom it passed. *People v. Chicago & Northwestern Ry. Co.*, 239 Ill. 42, 66 (1909). Moreover, there is no evidence that the subsequent deeds actually reflect Healy's intent. Healy's 1891 conveyance of lot 4 to the Seymours made no mention of the alley. Lot 4 was next conveyed in 1899, after Healy's death.

In sum, the record contains some evidence, primarily the plat of Healy's Subdivision, that suggests Healy intended to dedicate the strip of land. However, the evidence on this point is not unequivocal. Rather, the evidence on this point raises a factual question that precludes summary judgment in favor of the City. The remaining question is whether GASS can establish that the City lacks sufficient evidence to prove acceptance, an essential element of the City's claim of a common-law dedication.

■ Acceptance may be proved by evidence of: (1) direct municipal action, such as the municipality's filing of a suit to establish a dedication; (2) the municipality's possession or maintenance of the property; or (3) public use of the road for a substantial time. *Valentine*, 250 Ill. App. 3d at 1092, 619 N.E.2d at 842. However, whether any of these factors actually proves acceptance depends on the facts of each case. *Valentine*, 250 Ill. App. 3d at 1092, 619 N.E.2d at 842. Where a dedication is very beneficial or greatly convenient or necessary to the public, an acceptance of such dedication may be implied from slight circum-

stances. *Needham v. Village of Winthrop Harbor*, 331 Ill. 523, 539, 163 N.E. 468, 475 (1928). In the case of a blind alley or cul-de-sac, our supreme court has considered it of little public benefit, in which case much stronger evidence of acceptance is usually required. *H.A. Hillmer Co. v. Behr*, 264 Ill. 568, 577, 106 N.E. 481, 484-85 (1914).

 Moreover, an offer to dedicate land must usually be accepted within a reasonable time. *H.A. Hillmer Co.*, 264 Ill. at 576, 106 N.E. at 484. The donor may, at any time prior to acceptance, revoke his offer. *Clokey*, 353 Ill. at 361, 187 N.E. at 480. An offer to dedicate is impliedly revoked by his or her death prior to acceptance. *Chicago, Milwaukee & St. Paul Ry. Co. v. City of Chicago*, 264 Ill. 24, 30, 105 N.E. 702, 704 (1914). *Cf. Pocius v. Fleck*, 13 Ill. 2d 420, 428, 150 N.E.2d 106, 111 (1958) (gift must be completed prior to death of donor or it is considered revoked).

 In this case, the City does not claim that it accepted Healy's offer to dedicate by direct municipal action prior to Healy's death in 1894. The City claims that it accepted by including Healy's Subdivision in its official maps at its bureau of maps and plats. The making and filing of such a map by a City employee does not bind the City; thus, it is not sufficient proof, in itself, of an acceptance of an offer of dedication on the part of the City. *Chicago, Milwaukee & St. Paul Ry. Co.*, 264 Ill. at 29-30, 105 N.E. at 704. Indeed, in this case, where the City contends that its official maps were in error as a result of the recording of the 1928 Owner's Division, the City's reliance on map evidence is ironic. Furthermore, the City has not identified any official map from the period prior to 1928 in the record, let alone discuss how those maps identified the alley here.

The City also claims that it accepted because "[t]he alley has not been given a permanent index number and no real estate taxes have been assessed or paid on the alley." Like the inclusion of the plat on an official map, the failure to assess taxes, by itself, does not prove acceptance of an offer to dedicate, but it may be considered in connection with other acts. *H.A. Hillmer Co.*, 264 Ill. at 577, 106 N.E. at 485. However, the documentary evidence submitted by the City in this case, on its face, does not demonstrate that taxes were neither assessed nor paid during the period between the recording of Healy's Subdivision and Healy's death.[6] Indeed, the public record submitted by the City contains entries entitled "assessed valuation" for both the

---

[6]The City states on p. 31 of its brief that GASS "does not, and cannot, dispute that the plat was included with City's official maps and that no taxes were assessed between the 1882 subdivision and Healy's death." However, there is no record citation accompanying this assertion, and the only record

land and improvements thereto. The City cites no authority for the proposition that a failure to pay taxes evidences a common-law dedication, which is not surprising, given that the failure to pay is not an act or omission by the City.

The City claims its acceptance is shown by the lack of evidence that the adjacent owners were required to obtain a driveway permit. The City cites the current version of its municipal code, but cites no authority stating that a driveway permit was legally required in this case during the period prior to Healy's death.

The City claims its acceptance is shown by its maintenance of the property. The testimony on this point appears to be in some degree of conflict. However, none of the evidence purports to relate to the period of time relevant to acceptance of a common-law dedication. The same flaw is present in the City's evidence, in the form of Maniatis's deposition, a member of the public recently parked there, and that other members of the public would eat fast food purchased elsewhere in the alley at lunch time.

In sum, the evidence of acceptance submitted by the City does not address the period of time between the filing of Healy's Subdivision and Healy's death. Such evidence may have been relevant to acceptance of a statutory dedication, as an offer under the statute could only be withdrawn by a vacation of the plat under the statute. See *Kimball*, 253 Ill. at 112, 97 N.E. at 259. However, the City's evidence is simply irrelevant to show it accepted a common-law dedication prior to the implied revocation occasioned by Healy's death. Given the facts and circumstances in this case, including the complete lack of evidence necessary to sustain a key element of the City's claimed dedication, the trial court erred in denying GASS's motion for partial summary judgment on count I of its complaint.[7]

For all of the aforementioned reasons, the judgment of the circuit

---

citations provided on this subject do not address the relevant time period. The City makes its assertion to argue that GASS, as the plaintiff, has the burden of proof regarding the dedication. GASS notes that our supreme court has held that the burden of proof to establish a dedication is usually upon the party setting it up. *H.A. Hillmer Co.*, 264 Ill. at 577, 106 N.E. at 485. However, this case was decided upon cross-motions for summary judgment. Thus, the burden falls upon each movant as appropriate.

[7]At oral argument, the City suggested that a ruling against it would open "the floodgates of litigation," with people claiming interests in land long thought to be dedicated to the public. However, there is no evidence that any significant number of plats are marked similarly to the plat in this case. Moreover, as this opinion makes clear, the determination of the existence of a common-law offer and acceptance will turn on the facts of each case. The uni-

court of Cook County is reversed. This case is remanded to the trial court for further proceedings consistent with this opinion.

Reversed and remanded.

QUINN and REID, JJ., concur.

verse of reported dedication cases is small relative to other types of litigation; the legal principles applicable to this case have been rarely invoked in those cases. There was no flood of litigation in the wake of the decisions upon which the decision in this case relies. Thus, the City's fear seems illusory.