WILLIE B. HADLEY, JR., Plaintiff-Appellant, v. DONALD N. SNYDER, JR., *et al.*, Defendants-Appellees.

Third District    No. 3—01—0650

Opinion filed October 11, 2002.—Modified on denial of rehearing November 27, 2002.

McDADE, J., dissenting.

Willie B. Hadley, Jr., of Pinckneyville, appellant *pro se*.

James E. Ryan, Attorney General, of Chicago (Joel D. Bertocchi, Solicitor

General, and Mary Patricia Kerns, Assistant Attorney General, of counsel), for appellee.

JUSTICE BRESLIN delivered the opinion of the court:

The plaintiff, Willie B. Hadley, Jr., brought a federal civil rights action (42 U.S.C.A. § 1983 (West 1994)) against six named Illinois Department of Corrections (DOC) officials. The trial court granted the defendants' motion for summary judgment (735 ILCS 5/2—1005 (West 2000)). On appeal, Hadley contends that the court erred by (1) failing to compel the defendants to produce certain documents and to answer one set of interrogatories; and (2) granting summary judgment to the defendants. The defendants argue that Hadley failed to exhaust his administrative remedies. We rule that (1) Hadley exhausted his administrative remedies; (2) the court's failure to compel production of documents and answers to interrogatories was harmless; and (3) summary judgment against Hadley was appropriate because his section 1983 claim did not present a genuine issue of material fact.

## BACKGROUND

Hadley is a prisoner in the custody of the DOC. He requested to be placed in protective custody while in prison.

Protective custody is available to a prisoner when he fears for his safety or when the warden believes that the prisoner's safety may be in jeopardy. Protective custody inmates are housed by the DOC according to four categories. Category 1 and 2 inmates have been granted protective custody. Category 1 prisoners are smaller, less aggressive, and less institutionally sophisticated, while Category 2 inmates are larger, more aggressive, and more institutionally sophisticated. Category 3 inmates have been granted protective custody, but have not been classified as either Category 1 or Category 2 prisoners. Category 4 prisoners are those who have been denied protective custody and are awaiting administrative review of that denial. Category 4 is also called "kickout status."

All four categories of protective custody inmates are segregated from the general prison populace. Category 3 and 4 prisoners must be segregated from the Category 1 and 2 prisoners.

Hadley's request for protective custody was denied. He filed a grievance challenging the denial of his request. While waiting for his grievance to be reviewed, Hadley was placed in Category 4.

On February 26, 1999, Hadley filed a *pro se* section 1983 complaint against Donald N. Snyder, Jr., Michael O'Leary, Dwayne A. Clark, Jerome Springborn, Vernette Covin-Russell, and George E. Detella, who were DOC officials. In his complaint, Hadley alleged that while in "kickout status," he was denied access to a variety of programs and

services available to the general prison populace. He complained that he did not have access to the same exercise yard, gym, dining room, religious services, counseling, educational classes, jobs, library services, and barber services as the general populace.

Hadley alleged that because of these deprivations, the defendants had violated his first amendment right to free exercise of religion and his fourteenth amendment rights to due process and equal protection. He also contended that the DOC officials had violated a remedial order issued by the United States District Court for the Northern District of Illinois regarding the treatment of protective custody prisoners.

Both Hadley and the defendants moved for summary judgment. The trial court denied Hadley's motion and granted summary judgment in favor of the defendants. Hadley appealed.

Additional facts will be introduced as they relate to individual issues.

## ANALYSIS

### I. Exhaustion of Administrative Remedies

■ Hadley was required to exhaust his administrative remedies before filing a section 1983 complaint. 42 U.S.C.A. § 1997e(a) (West 1994). The defendants claim the record does not show that Hadley exhausted his administrative remedies. We disagree.

Hadley wrote a letter to the Director of the DOC complaining about limited access to the law library. That letter was received by the Office of Inmate Services on July 10, 1998. A memo from the DOC to Hadley, dated August 11, 1998, refers to Hadley's letter and indicates that he should use the proper grievance report form. The defendants' brief cites this DOC memo for the proposition that the Administrative Review Board (ARB) found that Hadley failed to follow the proper procedure to present his section 1983 grievances.

Hadley, however, filed a grievance on July 13, 1998, using the proper grievance report form. On July 16, 1998, the ARB denied Hadley's first grievance.

On October 16, 1998, Hadley filed a second grievance also using the proper grievance form. This grievance was received by the Office of Inmate Services on October 26, 1998. In this grievance, Hadley raised the same contentions that he raised in his section 1983 complaint. The DOC issued a memo to Hadley, dated December 9, 1998, regarding Hadley's second grievance. The memo stated, "ARB reviewed and denied 7-16-98," apparently in reference to the denial of Hadley's first grievance on July 16, 1998. The memo said that there was "[n]o justification for further consideration" of Hadley's second grievance. Hadley then filed his section 1983 complaint on February 26, 1999.

Based on the above documents, we conclude that Hadley exhausted his administrative remedies before filing his section 1983 complaint.

## II. Discovery Documents and Interrogatories

Hadley contends that the trial court erred by failing to compel (1) production of discovery documents, and (2) answers to interrogatories propounded by Michael O'Leary, Deputy Director of the DOC.

■ When a trial court errs by failing to compel discovery, such an error is harmless where it did not affect the outcome in the trial court. *Skonberg v. Owens-Corning Fiberglas Corp.*, 215 Ill. App. 3d 735, 576 N.E.2d 28 (1991).

### A. Production of Documents

■ The record in this case consists solely of the common law record. Hadley filed numerous discovery motions, including a request for production of documents and a motion to compel production of documents. Among other requests, Hadley asked for "[a]ny and all documents" for a period of several months for "kickout status" inmates concerning a variety of services and activities, such as the gym and other recreational facilities, dining room, group religious services, individual chaplain counseling, library, infirmary, commissary, visiting room, and barber shop. He requested a broad range of other policy documents, letters, logbooks, visitor slips, and memoranda from a variety of DOC sources and officials.

In their response, the defendants objected to these requests as being "overly broad, unduly burdensome and requiring the release of highly sensitive, confidential information." In some instances, the defendants stated that Hadley's requests were "not reasonably calculated to lead to the discovery of admissible evidence." The defendants referred Hadley to the correctional center's handbook for much of the information he sought. They provided Hadley with copies of various departmental rules and a schedule of religious services.

The defendants' response answered some of Hadley's questions directly without producing the documents he requested. The defendants contended that some of the documents Hadley sought either were not retained (such as visitor slips) or did not exist (such as logbooks concerning the movement of inmates to and from the dining room). They objected to the production of certain documents that were voluminous and would have required many hours to redact other inmates' confidential information.

The court denied Hadley's motion to compel production of documents. These documents were either nonexistent or were cumulative of information provided to Hadley. We rule that any error in the trial court's denial of Hadley's motion to compel the production of docu-

ments was harmless because the documents he sought would not have affected the outcome of his case.

## B. Interrogatories

■ Hadley submitted interrogatories to be answered by two DOC officials, one of whom was O'Leary. After not receiving answers for several months, Hadley filed a motion asking the court to compel the officials to answer the interrogatories. Thereafter, one of the officials provided answers, but O'Leary did not.

In his interrogatories to O'Leary, Hadley asked questions concerning (1) what O'Leary's title was with the DOC during certain dates; (2) whether O'Leary and other DOC employees received a copy of the remedial order; (3) whether O'Leary toured the unit in which Hadley was housed on a certain date; (4) whether O'Leary had a meeting during certain dates with four other DOC officials about programs and services for protective custody inmates; and (5) whether O'Leary thought that the programs and services provided to "kickout status" inmates were comparable to the programs and services provided to protective custody and general population inmates.

Although the trial court erred by failing to rule on Hadley's motion to compel answers to O'Leary's interrogatories, we determine that this error did not affect the outcome of his case. After a thorough review of the record, we find that the answers Hadley sought from O'Leary would have provided Hadley with (1) information Hadley already knew, (2) answers provided to Hadley from other sources, and (3) other information that would not have affected the outcome of his case. Therefore, we rule that, although it was error for the trial court not to compel O'Leary to answer his interrogatories, this error was harmless.

## III. Summary Judgment

Hadley argues that the trial court erred by granting summary judgment to the defendants.

■ In reviewing a trial court's grant of summary judgment, the appellate court reviews the evidence *de novo*, which is construed in the light most favorable to the nonmoving party. Summary judgment is proper when the plaintiff fails to establish a genuine issue of material fact. 735 ILCS 5/2—1005(c) (West 2000); *General Auto Service Station v. Maniatis*, 328 Ill. App. 3d 537, 765 N.E.2d 1176 (2002).

■ To prevail in a section 1983 claim, a plaintiff must prove that (1) the defendants' actions deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States, and (2) the defendants acted under color of state law. 42 U.S.C.A. § 1983 (West 1994); *Dennis E. v. O'Malley*, 256 Ill. App. 3d 334, 628 N.E.2d 362 (1993).

In his section 1983 claim, Hadley alleged that the DOC officials violated (1) his first amendment right to the free exercise of religion, (2) his fourteenth amendment due process rights, and (3) his fourteenth amendment equal protection rights. See U.S. Const., amends. I, XIV. He also contended that the DOC officials violated a United States district court's remedial order which protected these rights for prisoners held in protective custody.

## A. Remedial Order

■ The federal court's remedial order explicitly stated that it was establishing standards for Category 1 and 2 inmates, but not for Category 3 and 4 inmates. Hadley filed his section 1983 complaint as a category 4 prisoner. Thus, Hadley's argument that the defendants violated the remedial order with regard to him is without merit.

## B. Free Exercise of Religion

■ Hadley alleged that the defendants violated his right to exercise his religion because, as a Category 4 inmate, he was not allowed to participate in communal religious services.

The record indicates that Category 4 inmates were not allowed to attend communal religious services with the general prison populace or with Category 1 and 2 inmates. Category 4 prisoners, however, could request a visit with a chaplain at any time.

In his affidavit, defendant Jerome Springborn explained why the DOC did not allow Category 4 inmates to attend religious services with other prisoners. According to Springborn, Category 4 inmates who had not been granted protective custody posed a security threat to Category 1 and 2 inmates who were in protective custody. Conversely, the general prison populace posed a security threat to Category 4 prisoners whose protective custody status was still subject to review.

Prison regulations that impinge on an inmate's exercise of religion do not violate the first amendment if the regulations are reasonably related to legitimate penological objectives. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 96 L. Ed. 2d 282, 107 S. Ct. 2400 (1987). Security interests are legitimate penological concerns. *Al-Alamin v. Gramley*, 926 F.2d 680 (7th Cir. 1991).

In this case, the prison regulations regarding Category 4 inmates impinged on Hadley's right to the free exercise of his religion. These prison regulations, however, were reasonably related to legitimate penological objectives. Therefore, the defendants did not violate Hadley's first amendment right to religious exercise.

## C. Due Process

### 1. Access to the Courts

■ Hadley submitted that as a Category 4 prisoner, he was limited to using the law library two hours per week. He argued that this limitation amounted to denial of meaningful access to the courts.

To satisfy the right to meaningful access to the courts, a prisoner only needs to receive access to a law library that will enable him to research the law and determine which facts are necessary to state a cause of action. *Bounds v. Smith*, 430 U.S. 817, 52 L. Ed. 2d 72, 97 S. Ct. 1491 (1977). To show a violation of the right to access to the courts, a prisoner must prove (1) that prison officials failed to assist the prisoner in preparing and filing legal papers, and (2) some detriment caused by the officials' failure. *Jenkins v. Lane*, 977 F.2d 266 (7th Cir. 1992). Evidence of such detriment must establish specific harm, such as missed court dates, inability to file in a timely manner, denial of legal assistance, or loss of a case that could have been won. *Martin v. Davies*, 917 F.2d 336 (7th Cir. 1990).

In this case, Hadley did not establish that specific harm resulted from his access to the law library being limited to two hours per week. He failed to prove that his due process rights were violated by denial of meaningful access to the courts.

### 2. Other Access

■ Hadley argued that limited access to the exercise yard, gym, and educational and vocational programs affected his property and liberty interests protected by the due process clause.

A prisoner does not have a liberty or property interest in a prison job. *Penrod v. Zavaras*, 94 F.3d 1399 (10th Cir. 1996). A prisoner does not have a liberty interest in attending educational or recreational programs. *Murdock v. Washington*, 193 F.3d 510 (7th Cir. 1999). We find these federal cases persuasive.

In the instant case, Hadley has not shown that limitations on his access to prison programs or services affected his liberty or property interests. Consequently, these limitations did not violate his right to due process.

### D. Equal Protection

■ Hadley contended that limitations on his access to prison programs and services as a Category 4 prisoner, as compared to the general prison populace, violated his equal protection rights.

Prison officials do not violate the equal protection clause when they treat protective custody inmates differently from general population inmates based on legitimate penological concerns. *French v. Owens*, 777 F.2d 1250 (7th Cir. 1985).

Restrictions on Hadley's access to prison programs and services compared to the general prison populace were based on security interests. Because these limitations were based on legitimate penological concerns, Hadley failed to show that restricted access to prison programs and services violated his equal protection rights.

## CONCLUSION

Taking the evidence in the light most favorable to the plaintiff, Hadley's section 1983 complaint failed to allege a genuine issue of material fact that the defendants' actions deprived Hadley of rights, privileges, or immunities secured by the Constitution or laws of the United States. With regard to the summary judgment motion, when construing the evidence in the light most favorable to Hadley, the trial court did not err by granting summary judgment to the defendants. Therefore, we affirm the judgment of the Will County circuit court.

Affirmed:

SLATER, J., concurs.

JUSTICE McDADE, dissenting:

I do not agree with the majority's decision regarding discovery in this case and, therefore, respectfully submit a policy-based dissent.

Hadley had filed an action in state court raising claims against officials of the Department of Corrections pursuant to 42 U.S.C. section 1983. This was not a prison board hearing on a prisoner's complaint, but a full-fledged court claim to which all of the litigation rights and obligations established through the supreme court rules and the Code of Civil Procedure (Code), including, but not limited to, the rules concerning discovery, applied. In recent years, all levels of the state courts have wrestled continuously with the responsibilities of the parties in propounding and responding to discovery. The supreme court rules have increasingly emphasized the importance of discovery and the stringency with which the rules should be enforced. I have found nothing in the rules or the Code provisions that indicates that they apply with less force in litigation involving prisoners.

What the majority has done in this opinion is to condone the Attorney General's blatant refusal to comply with legitimate discovery requested by Hadley, paying lip service to the rules by noting their violation and the trial court's error in failing to compel compliance with the interrogatories but exacting no penalty. It finds errors to have been harmless, determining that the information sought by plaintiff was (1) already known to him, (2) cumulative, or (3) irrelevant because it could not have affected the outcome of his case.

In so doing, the majority has assumed and prejudged plaintiff's theory of his case. We can, of course, speculate but we have no knowledge how, or with what persuasiveness, he would have used the information he was seeking. This decision also overlooks the fact that discovery is a means of *proving* at trial information which parties may already "know" on some level short of admissible evidence. O'Leary's responses may have differed in some salient respect from the other responses, making them noncumulative and perhaps creating a fact question and some small window for meaningful development of the plaintiff's case.

Having foreclosed plaintiff's right to proper responses to the discovery he propounded to the defendants, the majority then finds, on the basis of "the record," that he has "failed to prove" his due process and equal protection claims.

I believe this decision denigrates both the inherent importance of discovery as a vital tool in the adversarial litigation process we have adopted in our courts and the efforts of our supreme court to emphasize its significance by insisting on full and careful compliance with discovery rules.

Because I would find reversible error with regard to what I believe to be clear discovery violations, I believe the balance of the opinion is premature.